**Douglas McKAY, Secretary of the Interior, Appellant,**

v.

**L. C. WAHLENMAIER, Appellee.**

**No. 12273.**

United States Court of Appeals District of Columbia Circuit.

Argued October 12, 1954.

Decided July 21, 1955.

Washington, Circuit Judge, dissented.

---

Mr. John F. Cotter, Department of Justice, with whom Mr. Edmund B. Clark, Department of Justice, was on the brief, for appellant.

Mr. Marvin J. Sonosky, with whom Mr. Max Barash, Washington, D. C., was on the brief, for appellee.

Before PRETTYMAN, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

This appeal presents questions concerning the power and duty of the Secretary of the Interior with respect to the issuance and cancellation of oil and gas leases on public lands. In considering them, the various provisions of the Mineral Leasing Act of 1920, as amended,[1] which govern such matters, should be first reviewed, together with implementing regulations.

When the Secretary of the Interior decides to lease for oil and gas purposes public lands which are not within any known geological structure of a producing oil and gas field, he is required by law to issue a lease to the person first making application therefor who is qualified to hold a lease under the Act.[2]

The Secretary has provided by regulation that when such a lease is cancelled, notice will be given that the land is open for a ten-day period for the filing of applications for a new lease thereon; all applications filed within the period will be regarded as having been filed simultaneously, and their priority will be determined by a subsequent public drawing. The regulation further provides that:

"Each applicant will be * * * required * * * to furnish a statement that the application is filed solely on his own behalf and not for any other person, association, or corporation, either in whole or in part. If any applicant fails to comply with the requirements, his application will not be entered in the

drawing but will be rejected without further notice. * * *" 43 C.F.R. § 192.43 (Supp. 1946).

Another regulation promulgated by the Secretary requires that an application for a lease on such lands "must contain in substance" certain information, including the following:

"A statement of the interests, direct and indirect, held by the applicant in oil and gas leases, and applications therefor on public lands in the same State, identifying by serial number the records wherein such interests may be found." 43 C.F.R. § 192.42(c) (Supp.1946).

The regulatory provision just quoted obviously was intended to aid in the implementation of § 27 of the Mineral Leasing Act, as amended, 30 U.S.C.A. § 184 (1946 ed.), which provides that:

" * * * [N]o person * * * shall take or hold at one time oil or gas leases exceeding in the aggregate fifteen thousand three hundred and sixty acres granted hereunder in any one State. No person * * * shall take or hold at one time any interest * * * as a stockholder of a corporation * * * holding * * * leases * * * under the provisions hereof, which, together with the area embraced in any direct holding of * * leases * * * under sections 181–184, 185–188, 189–194, 201, 202–209, 211–214, 223, 224–226, 226d, 226e, 227–229a, 241, 251, 261–263 of this title * * * exceeds in the aggregate an amount equivalent to the maximum number of acres of the respective kinds of min-

---

1. The provisions of the Act of 1920 and the amendments thereto enacted in 1927 and 1946 concerning leases for oil and gas on public lands are found in 41 Stat. 437 et seq., 44 Stat. 1058 et seq., and 60 Stat. 950 et seq., and appear in 30 U.S.C.A. § 181 et seq. (1946 ed.).

2. The pertinent portion of § 17 of the Act, 30 U.S.C.A. § 226 (1946 ed.), is as follows:

" * * * When the lands to be leased are not within any known geological structure of a producing oil or gas field, the person first making application for the lease who is qualified to hold a lease under said sections [of the Act] shall be entitled to a lease of such lands without competitive bidding. * * *"

erals allowed to any one lessee
* * *."

It has long been the consistent policy of the Interior Department, although not embodied in a formal regulation, that an individual can file only one application for participation in a particular drawing. The Secretary has in the past rejected multiple applications which he considered to have been collusively filed for the benefit of one applicant, in violation of this policy of fair play for all applicants.[3] The principal was expressly reaffirmed by the Secretary's decision in this case.

Such is the background of statute, regulation and policy against which the Secretary of the Interior acted in the situation which gave rise to the case before us. Through his Bureau of Land Management, he gave public notice that, as he had cancelled a prior lease on 1,567.03 acres of public land in New Mexico, the land was subject to oil and gas filing; and that all applications filed on or before November 10, 1947, at 9:00 a. m. would be considered as simultaneous filings, under the regulation which provides for that arrangement and for a subsequent public drawing to determine priority among the applications. The notice recited, in accordance with the regulation, that

"Each applicant will be called upon * * * to furnish an affidavit that the application is filed solely on his own behalf and not for any other person, association, or corporation, either in whole or in part. If any applicant fails to comply with the above requirements, his application will not be entered in the drawing."

An application for a lease on the acreage described in the notice was filed November 3, 1947, by Culbertson & Irwin, Inc., a New Mexico corporation engaged in the oil and gas business which already held interests in 20 oil and gas leases covering 9,436.84 acres of public land in New Mexico. E. A. Culbertson, the president and a director of the corporation and owner of 23.7 per cent of its capital stock, signed and verified its application.

Two days later, November 5, 1947, E. A. Culbertson, in his individual capacity and so in apparent competition with his corporation, filed an application for the same lease. He attached to it his affidavit that it was filed in good faith on his own behalf and for his own use and benefit, and not in behalf of any other person, association or corporation, either directly or indirectly.

The next day, November 6, 1947, Wallace W. Irwin, vice-president and a director of the corporation and owner of 19.3 per cent of its capital stock, in his individual capacity and so also in apparent competition with his corporation, filed an application for the same lease. He attached to it his affidavit identical with Culbertson's.

The three applications filed by Culbertson, Irwin and their corporation were identical in form, although no special form was required and no blanks were furnished by the Department.[4] They were prepared in the office of the corporation, typed by the same employee, and were dated, signed and acknowledged on the same day, October 27, 1947, before the same notary public in the office of the corporation. Nevertheless, the three applications were filed on different days, as we have seen.

None of the three applications just described made any reference to the other two. Neither Culbertson nor Irwin showed he was an officer and director of, and a substantial stockholder in, a corporation which was also applying for the lease that each was seeking for himself. Neither individual said in his application that the corporation held 20 oil and gas leases covering 9,436.84 acres of public

---

3. The related cases of Clifton Carpenter, A–22856 (January 29, 1941), and Edward A. Kelly, A–22856 (August 26, 1941).

4. The Secretary had provided by regulation, 43 C.F.R. § 192.42 (Supp.1946), that " * * * No specific form of application is required and no blanks will be furnished. * * *"

land in New Mexico, and neither showed himself accountable for his proportionate part of the acreage under lease to the corporation, although a regulation required disclosure of such accountability. The corporation's application did not show that its president and vice-president would, as individuals, immediately apply for the same lease.

More than eight hundred other applications for a lease on the 1,567.03 acres were seasonably filed, including one by the appellee, L. C. Wahlenmaier. A public drawing was held April 2, 1948, at which Culbertson's personal application was the first one drawn, and Wahlenmaier's was the second.

Some 17 months after the drawing, a lease was issued to E. A. Culbertson. Thereupon the Bureau of Land Management notified Wahlenmaier that his application was being rejected "for the reason that the lands involved are embraced in Oil & Gas Lease LC–066433 issued effective September 1, 1949, to E. A. Culbertson." The Bureau's letter added: "If no action is taken by you the case will be closed 30 days from date of receipt of this notice * * *."

Wahlenmaier's protest, on the ground that Culbertson was not a qualified applicant, was summarily rejected by the District Land and Survey Office at Santa Fe. Appeals to the Bureau of Land Management and then to the Secretary of the Interior were unsuccessful.

Having thus exhausted his administrative remedies, Wahlenmaier brought this suit, praying the District Court to declare and adjudge that Culbertson was not a qualified applicant, and that his application failed to comply with the requirements of the statute and with the regulations, decisions and declared policy of the Department of the Interior, was therefore invalid and should have been rejected; and that the lease to Culbertson was issued in violation of law and should be set aside. Wahlenmaier prayed also that the Secretary of the Interior be directed to cancel the Culbertson lease, and to issue a lease to him as the first qualified applicant therefor. District Judge Curran considered the case on the record made before the Department and granted the relief sought.

On this appeal the Secretary contends he correctly issued the lease to Culbertson, and says the District Court had no jurisdiction to order its cancellation. As to the first of these points, appellant's brief opens thus: "Culbertson is entitled to the lease issued to him by the Secretary if he is 'qualified' to hold a lease under Section 17 of the Leasing Act as amended."[5]

■ Section 17 is mandatory in directing that a lease be issued to the person (a) who first makes application and (b) who is qualified under certain other sections of the Act to hold a lease. Culbertson was qualified as a leaseholder under other pertinent provisions of the statute, so the question whether he was qualified under § 17 to hold a lease is reduced to the inquiry whether he was the person who first made application.

This remaining issue may be clarified by restatement. It is whether Culbertson's application was in such form and was filed in such circumstances that he was entitled to have it entered in the drawing. In other words, was he properly qualified *as an applicant?* If he was not, the fact that his written request for the lease was the first one drawn did not make him "the person first making application" therefor. If he was not such "person," the lease was wrongfully issued to him and should have been cancelled, even though he was otherwise "qualified" under the Act to hold a lease.

The question whether Culbertson was a qualified applicant, which is the real issue here, should be sharply distinguished from the question whether he was otherwise qualified to hold the lease,

---

5. Section 17 does not prescribe or deal with the qualifications of a leaseholder except for its requirement that he be the person who first made application. Other qualifications of a leaseholder appear elsewhere in the Act.

which is conceded and therefore not in issue.

The facts concerning the form of Culbertson's application and the circumstances in which it was filed are not in dispute. The Secretary found that his application was defective and that it was filed in an inherently unfair situation which would have caused it to be rejected had the real situation been disclosed before the drawing. Yet he refused to cancel.

In order to ascertain whether he correctly refused, it is necessary to examine in some detail the Secretary's discussion of, and legal conclusions concerning, the several infirmities which Wahlenmaier alleged disqualified Culbertson as an applicant and required cancellation of his lease. The alleged disqualifying factors are:

(a) that Culbertson failed to reveal his indirect interest in his corporation's federal leases, in violation of the regulation which required the revelation;

(b) that, contrary to the Department's established policy of giving every applicant an equal chance, Culbertson had more than one chance because of the collusive filing of three related applications; and

(c) that Culbertson swore falsely that he applied only for himself, when he had actually applied on behalf of his corporation.

The Secretary's decision does not discuss these matters under separate headings, but we shall do so in the interest of clarity, although at times the discussions will necessarily overlap.

**I**

■ As to the first of these three alleged infirmities, the Secretary found that Culbertson's failure to list in his application his interests as a shareholder in his corporation's federal oil and gas leases was a violation of the regulation which required such disclosure and rendered his application defective. An amendment to cure the defect was not filed either before or after the drawing.[6] It is therefore clear that Culbertson was not a qualified applicant when his defective application became the first one drawn.

The Secretary also said in his decision that he has authority to cancel an oil and gas lease for reasons existing at the time of its issuance where it clearly appears that "the lease was obtained in contravention of some statutory provision or some regulation issued by the Department * * *." He added this significant statement:

"* * * [I]f a noncompetitive oil and gas lease is issued to some person other than the first qualified applicant, in violation of the priority provided for in section 17 of the Mineral Leasing Act (30 U.S.C., 1946 ed., sec. 226), *the lease must be cancelled* and a new lease must be granted to the qualified person who filed the first application. * * *" [Emphasis added].

Despite this flat statement that a lease issued to an unqualified applicant *must* be cancelled, the Secretary held the lease here involved could not properly be cancelled on that ground because Culbertson's personal leases plus his undisclosed indirect interests did not exceed the maximum acreage permitted. When he thus said in effect that the defect in Culbertson's application was harmless, the Secretary disregarded his own precedents and the sound principle based upon them which he had just enunciated. He also overlooked his earlier statement that in administering the Act he "is entitled to proceed upon the basis of complete awareness respecting the relationship between corporations and their stock-

---

6. Amendment to show the indirect interests would have been permitted, but the application would have been effective only as of the date of amendment, according to the Secretary's holding in Clifford Thorp Woodward, A–25905 (Supp.) (June 15, 1951).

holders." The Supreme Court said in a somewhat comparable situation:[7]

" * * * The fact of concealment may be more significant than the facts concealed. The willingness to deceive a regulatory body may be disclosed by immaterial and useless deception as well as by material and persuasive ones. * * * "

His failure to distinguish between a qualified applicant and a qualified leaseholder probably confused the Secretary and caused him to reach the erroneous conclusion that a lease held by one otherwise qualified to hold it could not be cancelled on the ground that the application was defective under a Departmental regulation and should not have been included in the drawing. For we observe that both before and after his decision in this case, the Secretary has not hesitated to hold that an application which fails to disclose the stockholder's interest, if any, in a corporation's federal leases "is properly rejected and will confer no priority on the applicant." Clifford Thorp Woodward, A–25905 (Supp.) (June 15, 1951); S. J. Hooper, A–26976 and A–26996 (August 3, 1954).

The words just quoted are taken from the Secretary's Hooper opinion. In support he cited his decisions in the Woodward case and in Hill v. Culbertson, which is the case presently before us, and appended the following footnote, in which he seems to rely upon the District Court decision from which he now appeals:

"The departmental decision in the Hill v. Culbertson case (supra) was reversed in a recent decision by the District Court for the District of Columbia (L. C. Wahlenmaier v. Douglas McKay, Civil No. 4087–51). An appeal is being taken from this decision. However, with respect to the question here involved, the court's decision in the Wahlenmaier case seems strongly to support the

Department's decision in the Woodward case. In the Wahlenmaier decision (as supplemented by the findings of fact and conclusions of law), the court apparently held that a lessee who did not comply with the requirement that he list in his application his other interests was not a qualified lease applicant, even though the acreage held by the lessee did not, in fact, exceed the legal limitation, and directed the Secretary of the Interior to cancel the lease which was issued on the basis of an application defective in this respect. A fortiori, it would be proper to reject an application to lease which is defective because of the failure of the applicant to list his other interests."

The Secretary's refusal to cancel on the first of the three grounds enumerated above was either caused by confusion or was arbitrary and capricious action. In either event he erred, and unjustly deprived Wahlenmaier of the lease.

## II

We come next to the question whether Culbertson's lease should have been cancelled because he had more than one chance in the drawing. With respect to this, the Secretary's decision points out the long-established rule that an individual can file only one application for participation in a particular drawing. It then refers to his opinions deciding two earlier related cases [8] where it appeared that 12 applications were collusively filed for the purpose of giving one applicant an advantage over others. He stated he had there rejected the 12 applications and, in the course of his decision thereon, had said:

" * * * [T]he Department will not give its approval to a practice which even tends to deprive any claimant of the right to fair and impartial treatment in matters over which it has control, and fair minds

7. Federal Communications Comm. v. WOKO, 1946, 329 U.S. 223, 227, 67 S.Ct. 213, 215, 91 L.Ed. 204.

8. Clifton Carpenter, A–22856 (January 29, 1941), and Edward A. Kelly, A–22856 (August 26, 1941).

will agree that the protestant in this case was deprived of his right of equal opportunity to be the successful applicant for the lease."

He then concluded in his decision here:

"Thus, it has long been the policy of the Department, reflected in formal rulings, that each applicant should have an equal chance with every other applicant in the case of simultaneous applications for a noncompetitive oil and gas lease."

Having stated this high standard of fairness, the Secretary found that, because of the corporate and the two individual filings, Culbertson had in effect 1¼ chances to acquire the lease, Irwin had about 1⅕, and in combination with the corporation they had three chances against the single chance of the ordinary applicant. "Such a situation," he said, "seems inherently unfair (despite the fact that 1¼ or 1⅕ or three chances may not have been susbtantially disproportionate in relation to a total of more than 800 chances)."

"*  *  *  [I]f the situation had been called *at an appropriate time* [9] to the attention of the official in charge of the drawing," and if the official had, because of it, rejected all three of the apparently related applications, or had declined to issue a lease to Culbertson, the Secretary's decision-opinion indicates he would have approved and affirmed such action.

Culbertson created and did not disclose the inherently unfair situation which, had it been known, would have disqualified him as an applicant and would have caused the lease to be withheld from him. Why, then, did the Secretary refuse to cancel the lease which had been issued to one not entitled to it?

■ His decision, in attempting to justify the refusal to cancel on that ground, says:

"*  *  *  We are faced with the fact that the Culbertson, Irwin, and Culbertson & Irwin, Inc., applications actually were included in the drawing, and, as a result of the drawing, a lease was issued to Mr. Culbertson.

"This poses the difficult question whether, in view of the existing legal relationship of lessor and lessee between the Government and Mr. Culbertson,[10] the Secretary of the Interior could now act to cancel the lease because of the circumstances under which it was obtained by Mr. Culbertson."

Then the Secretary proceeded to examine "the difficult question." He concluded he has authority to cancel an oil and gas lease "for reasons existing at the time of its issuance" which clearly show "that the lease was obtained in contravention of some statutory provision or some regulation issued by the Department,"[11] but added, *"Such a reason is not revealed by the record in this case."* [Our emphasis].

The italicized statement is manifest error. The Secretary had expressly found that Culbertson had obtained the lease in contravention of the regulation which required him to disclose his interests in corporate leases, which we have discussed in the preceding section of this opinion. Moreover, the inherently unfair situation which would have caused the rejection of Culbertson's application, had it been known, was sufficient to war-

---

9. Emphasis supplied.

10. This statement rather begs the question. If Culbertson was not qualified as an applicant, the lease did not create a legal relationship.

11. We think the Secretary unduly restricted his own power of cancellation. He has the right to cancel a lease improvidently issued to a disqualified applicant, to the prejudice of the rights of others, whether or not there is involved a violation of some provision of the statute or of a regulation. This is particularly true where fraud, deception or concealment caused the lease to be issued.

rant cancellation after it was discovered, even though the situation had not been the result of violating a regulation, but had been brought about by collusive multiple filings which gave one applicant more than one chance in the drawing.

The Secretary's statement that "Such a reason is not revealed by the record," which was partly the basis of his refusal to cancel the lease, was abandoned on appeal. His brief here admits, as it must, that Culbertson obtained the lease in contravention of a regulation; it states that the Secretary obviously thought the failure to comply with the regulation did not disqualify Culbertson *as an applicant*.

■ It is argued that, since the Secretary devised the regulation, he alone has the right to say what the consequences of violating it shall be. Whether that is so, we need not decide. The Secretary is bound by his own regulation so long as it remains in effect.[12] He is also bound, we think, to treat alike all violators of his regulation. He may not justify, simply by saying the violation is unimportant, his departure in a single case from an otherwise consistent policy of rejecting applications which do not conform to the regulation.

■ A lease which was obtained through the applicant's creation and concealment of an inherently unfair drawing cannot be said to have created a legal relation of lessor and lessee which is impervious to cancellation. We think the Secretary was plainly wrong (a) in saying the record does not show the lease was obtained in contravention of a regulation, and (b) in refusing to cancel because Culbertson had unfairly and secretly obtained more than one chance in the drawing.

### III

The next inquiry is whether Culbertson's application was filed solely in his own behalf and not for any other person, firm or corporation. A regulation, 43 C.F.R. § 192.43 (Supp.1946), required him to furnish a statement to that effect, and provided that "If any applicant fails to comply with the requirements, *his application will not be entered in the drawing* but will be rejected without further notice." [Emphasis added].

Culbertson's affidavit containing the required statement did not comply with the regulation unless it was truthful in fact and accurate in law. Although the spaced filing of the three identical and simultaneously prepared applications, none of which referred to the other two, strongly indicates collusion intended to deceive the Department, we do not stop to consider whether the affidavit was factually truthful. Even if Culbertson actually intended to apply for the lease in competition with his corporation and to retain it for himself if he were successful in the drawing, his affidavit did not meet the regulation if, under equitable principles, he acted as a fiduciary for his corporation in making application. Whether he intended that result or knew it would ensue is immaterial.

This question was sharply called to the Secretary's attention by the Director of the Bureau of Land Management. That official considered Wahlenmaier's appeal and denied it September 1, 1950, saying there was no evidence that Culbertson's application was filed in behalf of the corporation.[13]

12. A regulation promulgated pursuant to the Mineral Leasing Act has " * * * the force of law. That it binds him [the Secretary] as well as others while it is in effect is not doubted." Chapman v. Sheridan-Wyoming Coal Co., 1950, 338 U.S. 621, 629, 70 S.Ct. 392, 397, 94 L. Ed. 393.

13. He mentioned the fact that each of the three challenged applications was accompanied by the applicant's own check for the filing fee and rental. The Secretary's decision refers to this as distinguishing the present case from the Carpenter-Kelly cases where one corporation paid the filing fees of all 12 applications. We think the separate checks, coupled with the carefully spaced dates of filing, accentuate the concealment of collusive multiple applications.

But, slightly more than three months later, December 8, 1950, when he transmitted the appeal papers to the Solicitor for final action in the name of the Secretary of the Interior, the Director of the Bureau of Land Management had given further thought to the matter. He said in his letter of transmittal:

"Upon further consideration of the Bureau's September 1 decision, I believe that it would have been proper to have rejected the applications of the corporation and of Culbertson and Irwin as individuals because they as officers of the Corporation were obligated not to act personally against its interests. In competing with the corporation for a lease, they either violated their duties as officers of the corporation so that they could be held in equity to hold the lease for the corporation's benefit, or they in fact applied on behalf of the corporation. In either case, we believe that the applications were collusive.

"When the ownership of the corporation is considered, it appears that the corporation is primarily designed as the instrument through which Culbertson and Irwin carry on their mineral activities and in fact that by having the corporation submit a bid along with their individual bids, they obtained three chances for the lease where their actual interests entitled them to only one. (See 43 CFR 192.43 as it read at time of drawing, Circular 1624 of October 28, 1946.)"

Nevertheless, the Director did not change his previous decision because, as he said, "The values involved are so high and the issue so controversial that it is inevitable that the ultimate decision will have to be made on the Departmental level" and because other issues in related appeals made it necessary to submit the cases for Departmental decision anyway.

The Secretary's decision-opinion neither mentioned nor discussed the suggestion made by the Bureau Director that, if Culbertson did not in fact intend to apply on behalf of his corporation, but rather in competition with it, he would nevertheless be held in equity to have acted for the corporation because of his fiduciary relationship to it. The Secretary was content to say no more than this:

" * * * With regard to the regulation requiring each applicant in the case of simultaneous filings to certify his application 'is filed solely on his own behalf and not for any other person,' Mr. Culbertson states under oath that this is true in the present instance, and there is nothing in the record to discredit his statement, other than the bare fact of his relationship to Culbertson & Irwin, Inc. This record would not support a finding that Mr. Culbertson, in submitting his application, was necessarily acting on behalf of the corporation and not in his individual capacity, as he states under oath."

Nor does the appellant's brief here discuss the fiduciary question. It simply points out that Culbertson swore he applied for himself and not for the corporation, and adds: "After investigation by the Bureau of Land Management * * * its Director * * * and the Secretary * * * so found. There is no evidence to the contrary." This statement ignores the Director's letter of December 8, 1950, to the Secretary in which he retracted his decision of September 1, 1950, and said the three applications were collusively filed and should have been rejected.

■ That Culbertson was in a fiduciary relationship with the corporation is beyond dispute, for it is universally held that the directors and officers of a corporation, particularly its president entrusted with its management, occupy such a relationship. Whether he violated his duty as a fiduciary must be determined.

Culbertson knew the corporation, of which he was president, director and substantial stockholder, wanted the lease.

He knew, of course, that it would be appropriate for the corporation to acquire the lease, since its acquisition would be in the line of its oil and gas business. In fact, he executed the corporate application and caused it to be filed November 3, 1947. Then, two days later, he filed his own application for the same lease, swearing he was not applying for the corporation. If in truth he was not, then he was competing with it for a potentially valuable business opportunity.

We have no doubt that in these circumstances it would be held, at the suit of the corporation or a stockholder in a proper case, that he holds the lease in a fiduciary capacity for the use and benefit of the corporation.[14] This view is in essence stated by Fletcher.[15] It is supported by several decisions dealing with somewhat analogous facts, and we find none to the contrary, although some courts place restricting conditions in the rule. See Durfee v. Durfee & Canning, Inc., 1948, 323 Mass. 187, 80 N.E.2d 522, for a discussion of the differing conditions in which various courts apply the principle.

There was presented to the United States Court of Appeals for the Seventh Circuit, in Central Railway Signal Co. v. Longden, 7 Cir., 1952, 194 F.2d 310, a situation in which the president of a corporation had flagrantly diverted to his own benefit a corporate business opportunity. First observing that " * * *

there can be little question as to the law generally covering the actions of officers and directors of corporations with reference to diversion of corporate opportunities", Judge Lindley wrote this for the court, 194 F.2d at page 318:

> "It cannot be denied that Longden occupied a fiduciary position and owed an obligation to plaintiff to develop the opportunity for it and in its behalf, and to refrain from doing anything that might work injury to his beneficiary or deprive it of profit or advantage which his skill, knowledge and ability might personally bring to it or enable it to realize in the reasonable exercise of its power. Pepper v. Litton, 308 U.S. 295, 311, 60 S.Ct. 238, 84 L.Ed. 281; Guth v. Loft, Inc., 23 Del.Ch. 255, 5 A.2d 503, at page 512; Durfee v. Durfee & Canning, Inc., 323 Mass. 187, 80 N.E.2d 522. * * *"

In addition to these authorities, which amply support the court's conclusion, Judge Lindley noted, 194 F.2d at page 319 that:

> "In Lutherland, Inc., v. Dahlen, 357 Pa. 143, 151, 53 A.2d 143, 147, the court commented: 'In short, there is demanded of the officer or director of a corporation that he furnish to it his undivided loyalty; if there is presented to him a business opportunity which is within the scope of its own activities and of present or potential advantage to it,

---

14. We regard as immaterial the possibility that, subsequent to the drawing, the corporation's directors may have expressed approval of Culbertson's conduct in obtaining the lease against the corporation's interests. This possibility is seen in the report of an Interior Department field examiner that, during an interview, Culbertson "* * * produced minutes of the regular monthly meeting of the Board of Directors of Culbertson and Irwin, Inc., held on April 6, 1948 in which was stated that he had filed an application for lease for his own sole benefit and that the corporation had no interest, direct or indirect, in this application and had not advanced to him any part of the money sub-

mitted in connection with his application. * * *"

The meaning of this somewhat vague language is not clear. It may mean that four days after the drawing Culbertson told his fellow directors he had successfully competed with the corporation for the lease and intended to keep it for himself. Or it may mean the directors resolved that the corporation had no interest in the lease. In either event, the entry in the minutes is without significance. The directors could not bind the other stockholders and prevent them from attacking the transaction as having been done in violation of Culbertson's fiduciary duty to the corporation.

15. 3 Fletcher, Private Corporations § 861.1 (perm. ed. rev. repl. 1947).

the law will not permit him to seize the opportunity for himself; if he does so, the corporation may elect to claim all of the benefits of the transaction.' "

In Jasper v. Appalachian Gas Co., 1913, 152 Ky. 68, 79, 153 S.W. 50, 55, the court said that one in

" * * * a position of trust in the management and conduct of the affairs of a corporation * * * owes to said corporation the duty * * * of refraining from doing anything whatever that would injuriously affect said corporation, or deprive it of any profits which his skill and ability might properly bring to it, or enable it to make, in the fair and legitimate exercise of its powers. * * * "

As far as we know, the Supreme Court of New Mexico has not had occasion to consider a situation such as is presented here. We may safely assume it would follow the general rule which is just and salutary.

■ From what has been said, we conclude the Secretary should have decided that, as a matter of equity, Culbertson applied in behalf of, and so holds the lease in trust for, the corporation of which he was president. The appellant was plainly wrong in refusing to cancel the lease on that ground.

## IV

■ We turn finally to the appellant's contention that the District Court lacked jurisdiction to order the lease cancelled. In his brief he argues that the courts may not entertain a suit to review his decision which charges that he made an erroneous finding of fact or misconstrued a statute or an implementing regulation thereunder. One of the cases the Secretary cites in support of his claim to virtually complete immunity from judicial scrutiny is Shepley v. Cowan, 1875, 91 U.S. 330, 23 L.Ed. 424. In the course of the opinion, the Supreme Court said, 91 U.S. at page 340:

" * * * If they [the officers of the land department] err in the construction of the law applicable to any case, or if fraud is practised upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions * * *."

We need not examine the validity of the appellant's broad claim that his decisions are unreviewable, for he says in his brief, "Only if the Secretary is indisputably wrong, may he be corrected by a court." We suppose the term "indisputably wrong" means "clearly and indubitably erroneous." Judged by his own standard, the Secretary's decision here was properly set aside by the trial judge. It was, as we have shown, patently erroneous on all three grounds upon which it was challenged.

The District Court found the three Culbertson-Irwin applications were not filed in good faith and were collusive. This was equivalent to saying they were filed pursuant to a scheme to deceive the Department. The result was that in an unfair drawing Wahlenmaier was deprived of the lease and Culbertson obtained it in violation of his duty as a fiduciary. In such circumstances, once the basic nature of the scheme was uncovered, it was the Secretary's duty to undo it. Since he refused to do so, it was the duty of the District Court, in the exercise of its equitable jurisdiction, to require him to take appropriate action. "Otherwise," as the Supreme Court said in Pepper v. Litton, 1939, 308 U.S. 295, 312, 60 S.Ct. 238, 248, 84 L.Ed. 281, "the fiduciary duties of dominant or management stockholders would go for naught; exploitation would become a substitute for justice; and equity would be perverted as an instrument for approving what it was designed to thwart."

There can be no doubt as to the District Court's power, not only to direct

the Secretary to cancel a lease issued to an unqualified applicant, but also to order him to issue one to the person first making application therefor who is qualified to hold a lease. Whether to offer land for lease is a discretionary matter with the Secretary. But, having invited applications for a noncompetitive lease, he has no discretion as to selecting the lessee; the statute awards the lease to the first qualified applicant. That is to say, it is then the plain legal duty of the Secretary to perform the merely ministerial act of issuing a lease to such applicant. When, as in this case, the Secretary refuses to perform that act, under a familiar and well established principle the courts may mandatorily order him to do that which the statute requires him to do and about which he has no discretion. In dissenting on this point, our brother Washington seems not to have taken into account the Secretary's total lack of discretion concerning the issuance of a lease to the first qualified applicant.

The Secretary's decision was probably based on confusion as to the nature of the question before him, and misapprehension of his own power and duty to cancel a lease obtained as this one was. If it was not so based, the decision is a shocking example of arbitrary administrative action. We hold the District Court's findings of fact were supported by the record and that its conclusions of law were in all respects correct. We must therefore uphold the judgment which ordered the Secretary of the Interior to cancel the Culbertson lease and, in pursuance of his statutory duty, to issue one to Wahlenmaier as the first quali-

fied applicant, provided he was in every other way qualified to hold a lease.

Affirmed.

WASHINGTON, Circuit Judge (dissenting).

The Secretary of the Interior made a considered decision under Section 17 of the Mineral Leasing Act[1] that Culbertson was entitled to receive the lease for which he had applied and for which his name was first drawn. Such a decision involves not only fact-finding and legal construction, but also the exercise of discretion. See United States ex rel. Goldberg v. Meyer, 1911, 37 App.D.C. 282, 288, affirmed sub nom. Goldberg v. Daniels, 1913, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191. The District Court, acting on the same record that the Secretary had before him, took a different view of the facts and of the law. It then substituted its own judgment as to the proper course to be taken. But, since the Secretary's view of the facts and the law was not lacking in a reasonable basis, the court was not entitled to interfere with his decision. "Whether he decided right or wrong, is not the question. Having jurisdiction to decide at all, he had necessarily jurisdiction, and it was his duty to decide as he thought the law was, and the courts have no power whatever under those circumstances to review his determination by mandamus or injunction." Riverside Oil Co. v. Hitchcock, 1903, 190 U.S. 316, 324–325, 23 S.Ct. 698, 702, 47 L.Ed. 1674. And see Ness v. Fisher, 1912, 223 U.S. 683, 691 et seq., 32 S.Ct. 356, 56 L.Ed. 610; Chapman v. Sheridan-Wyoming Co., 1950, 338 U.S. 621, 630–631, 70 S.Ct. 392, 94 L.Ed. 393. Cf. Shepley v. Cowan, 91 U.S. 330, 340,[2] 23 L.Ed. 424.

1. 30 U.S.C.A. § 226.

2. The dictum from Shepley quoted by the majority opinion in the present case suggests only that certain rulings of the Secretary may be disregarded by the courts in a controversy "between private parties," such as was then before the Court. The Supreme Court went on to say: " * * * but, for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from one officer to another of the department, and perhaps, under special circumstances, to the President." 91 U.S. at page 340. Nothing in Shepley departs from the settled rule stated in such cases as Riverside, Ness and Chapman, that suits against government officers designed to obtain government property or an interest in it cannot be maintained.

In the second place, the court orders the cancellation of a government contract (a lease) at the instance of a contracting party's disappointed competitor, to whom it then orders the lease awarded. Such relief is entirely unprecedented. This court has only recently re-affirmed the established rule that a bidder for a government contract cannot assail the validity of the contract actually awarded because of a violation of the laws or procedures governing contract awards by the government. See Friend v. Lee, 1955, 95 U.S.App.D.C. 224, 221 F.2d 96, and cases cited. The court here not only cancels the awarded contract, but directs the Secretary to make a new contract with the plaintiff-appellee. Quite clearly, the courts lack power to do this. See Larson v. Domestic & Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628. *A fortiori* there is no such power when—as here—the result of the court's order would be to direct the United States to part with an interest in public property. Ibid, 337 U.S. at page 691, note 11, 69 S.Ct. 1457; Goldberg v. Daniels, 1913, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191.