**BONITA, INC., et al., Petitioners,**

v.

**W. Willard WIRTZ, Secretary of Labor, and Clarence T. Lundquist, Administrator, Wage and Hour Division, United States Department of Labor, Respondents.**

**No. 19841.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 13, 1966.

Decided Nov. 10, 1966.

---

Mr. Franklin M. Schultz, Washington, D. C., with whom Messrs. Mitchell J. Cooper and Robert M. Kennan, Jr., Washington, D. C., were on the brief, for petitioners.

Mr. Robert E. Nagle, Atty., Department of Labor, with whom Mr. Charles Donahue, Solicitor of Labor, Mrs. Bessie Margolin, Associate Solicitor, and Mrs. Helen W. Judd, Atty., Department of Labor, were on the brief, for respondents.

Before DANAHER, BURGER and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

This petition to review a minimum wage order issued by the Administrator of the Wage and Hour Division of the Department of Labor advances a number of reasons why the order should be set aside. We consider only one, because the parties have stipulated in this court that, if this point is well taken, the order falls in its entirety. We think it is very well taken indeed.

I

At issue is the minimum hourly rate to be paid in the sweater and knit swimwear industry in Puerto Rico. A rate of $1.17 had been established in 1963, and this was continued in November of 1964 by a 5–4 vote of Industry Committee 68–C.[1] In August of 1965, the Secretary of Labor invoked the discretion available to him under the statute to anticipate the normal biennial review; and Industry Committee 75 was created to review the rate afresh.

Public hearings were held and testimony taken. When the hearings ended,

1. The immediately relevant provisions of the Fair Labor Standards Act, 52 Stat. 1060–69 (1938), as amended, 29 U.S.C. §§ 201–219 (1964), are Sections 5 and 8. An industry committee is to be made up of equal numbers of public, employee, and employer representatives. The committee is, after receiving evidence, required to file with the Secretary of Labor a report containing findings of fact and recommendations; and the Secretary is directed to publish such recommendations in the Federal Register and to provide by order for their taking effect 15 days after publication. The Secretary's duties in this latter respect, which do not appear in terms to admit of any discretion, have been delegated by him to the Administrator. As he is authorized to do, the Administrator has prescribed detailed regulations covering the procedures by which the minimum wage determinations contemplated by Section 8 of the Act are to be made. 29 C.F.R. § 511.

the Committee met in executive session on the afternoon of November 10, 1965, with its full membership of 9 present. The journal of that session shows that, after a substantial period of time spent in "group caucuses," the members reassembled as a unit and were informed by the Chairman that it was in order to begin voting on the hourly rate to be recommended. An employee member moved a rate of $1.25. This motion lost, 4 to 5. An employer member next moved a continuation of the $1.17 rate. This lost, 3 to 6. A public member then moved a rate of $1.20. This lost 2 to 4, with 3 abstentions; and the members again went into group caucuses. Reassembling after 20 minutes, the last movant renewed his $1.20 proposal, losing 3 to 4, with two abstentions. After an employer member started to make a motion, he yielded to the prior movant who again proposed $1.20. This carried 5 to 4, the plurality being made up of two employee members, two public members, and one employer member. The two employer members, and the one employee member, of the minority then announced their intention to file dissenting opinions, and the minutes close with this entry:

The Committee decided to meet again at 10:30 a. m. on Friday, November 12th, to discuss and consider approval of the Report, Findings of Fact, and Recommendations.

The Committee reassembled on November 12. Only 6 members were present at the outset, these being two public members, one employer member, and the three employee representatives. Discussions were delayed for a time pending arrival of the absent members. One of them—a public member—came in, and the journal recites that the two employer absentees were, respectively, in New York and another part of Puerto Rico. The public member who arrived late complained of feeling ill, and left. The Chairman then presented the draft of the Report, and it was in due course approved. Thereupon the public member who had originally moved the $1.20 rate proposed that it be increased to $1.22. The Chairman ruled this out of order as not being within the terms of the adjournment of the prior meeting, citing Section 511.12(b) of the Regulations. The labor member who had seconded the pending motion challenged this ruling and, against advice given by the Labor Department counsel after he had consulted by telephone with the Solicitor in Washington,[2] it was overturned by a 5–1 vote. The motion for $1.22 was then adopted by a 5–1 vote. The dis-

---

2. Counsel to the Committee was first asked his opinion. Although he characterized the absence of the three members as important "since the Department would view it as desirable that all members of the Committee be given an opportunity to make comments on a situation such as this," he concluded that he could not give final advice without consulting his superior. The result of this consultation is reflected in the following excerpts from the minutes:

> Regional Attorney Marks, at the request of the Committee, commented on the importance of having complete attendance of the Committee. He stated that the office of the Solicitor in Washington had been contacted. Whereas the Regulations indicate that the Committee could operate through a quorum, he advised that all members be given ample notice and opportunity to be present for the deliberations. * * *
>
> Mr. Marks stressed that the Department would especially like to see a full

complement of the Committee in these deliberations before any further action was taken. He also cautioned about the possible impediment presented by Section 511.12(b). He indicated that figuratively speaking, the Department would like to 'dot every i' and cross every 't'.

The transcript, upon which the minutes are based, indicates that, although the Regional Counsel appeared in the last analysis to prefer not to rest his advice upon a purely legal basis, he strongly urged the Committee not to take any legal risks:

> MR. MARKS: I can only conclude my comments at this time by saying that the Department would very much like to see a full complement of the committee present for the continuation of deliberations and voting.
>
> These are our strongest recommendations to the committee.
>
> Thank you very much.
>
> CHAIRMAN HORLACHER: Mr. Marks, it is the Chair's impression that what has

senter was the Chairman, a public member, who signed the Report but dissented from the wage recommendation. The majority was composed of the three employee members, one public member, and the employer member who had initially supported the $1.25 rate.

## II

The position of the respondents, in brief and argument before us, essentially is that members absented themselves at their peril from the November 12 meeting.[3] In support of this proposition reliance is placed upon cases and authorities from the field of public and private corporations to the effect that an adjourned meeting may reconsider matters voted upon at the original meeting, always provided that a quorum is present. It seems to us, however, that this emphasis upon the imperilment of individual Committee members is misplaced. It is the corporate petitioners who are before us complaining, not the individual employer members who were not present at the November 12 meeting. It is the former who are affected by the order, not the latter. The question is not whether the individual employer members of the Committee are justified in feeling personally aggrieved by what their colleagues did, but whether the petitioners have been improperly deprived of the full and fair operation of the tripartite process provided by the Congress for minimum wage determinations.

In our view, the light shed by the law of town meetings on this issue shines but dimly. It is possible to be of two minds about the merits of the tripartite approach to the determination of labor-management disputes. There can be no difference of view, however, on the essentiality of the scrupulous observance in practice of the values of balance which are thought to guarantee the fairness, as well as to enhance the rationality, of this particular adjudicating device. It is difficult to conceive of anything more likely to shatter public and private confidence in the tripartite approach than the tale unfolded by the proceedings of this Committee. Since issues of policy as well as of law were presented at the climactic November 12 meeting, we are not surprised that the last word of advice from the highest representative of the Department of Labor present, after checking with the Solicitor himself, was that the Committee not go ahead with the proposed raise in the rate. This is one of those heartening occasions when lawyers show more sensitivity than laymen to the

been done in telephoning Mr. Titelman and Mr. Atkind does not, in the opinion of the Regional Attorney, constitute due notice and adequate opportunity for them to participate in this meeting. I think it is rather important that the counsel indicate whether this impression is correct or not.

MR. MARKS: Mr. Chairman, as I say, I do not believe that the regulations would require them to be here. However, it is our honest and earnest desire to dot every "I" and cross every "T", so that in the event that the action of this committee is appealed by any of the parties to the appropriate United States Court of Appeals, that this committee will have shown by its action that it has done not just everything that is required of it by the regulations, but has made every effort whatsoever to comply, has made every effort whatsoever to have everybody present here.

3. Petitioners have filed with their briefs three affidavits made, respectively, by the Chairman of the Committee and the two employer members who were absent on November 12. They are addressed in the main to reciting certain representations said to have been made at the time of the adjournment of the November 10 meeting. Petitioners have moved to strike these affidavits as being outside the administrative record. In the view we take of the inadequacies of what that record does show in respect of Section 511.12(b) of the Regulations, we regard the motion as moot in the sense that the facts alleged in the affidavits are irrelevant to our ground of decision. There is no dispute of fact as to what the journal of the November 10 meeting shows, nor as to what the journal and the transcript show as to the November 12 meeting. Three members of the Committee were absent at a time when the Committee took action on a matter which was not comprehended within the terms of adjournment.

fact that in some contexts legal technicalities afford neither a comfortable nor a safe refuge.

■ Being a court, as distinct from the executive agency charged with administering this statute, our business is law, and not departmental policy or public relations. We do not invalidate minimum wage orders unless they have been arrived at in an illegal—and not merely in what we might think an undesirable—way. In this case we think invalidation is necessitated in purely legal terms by reason of a departure from the respondents' own established rules.[4]

At the November 12 meeting of the Committee, the Chairman ruled out of order the motion to increase the rate because of Section 511.12(b) of the Regulations, which is as follows:

> A committee may adjourn its meeting or hearing, or both, from time to time, and meet again, at hearing or otherwise, pursuant to the terms of adjournment, or on call of its chairman or the Administrator.

The Chairman stated his opinion to be that, if the Committee were to reopen the wage determination, the meeting would not be "pursuant to the terms of adjournment," as required by the regulation.

■ In this we think he was wholly right, and that it was the Committee members, who overthrew this ruling and raised the rate, who were proceeding at the peril of the validity of the resulting rate. The nature of the proceedings at the November 10 meeting, and the closing entry of the journal of that session, appear to us to be at one in the impression they give that the voting battle was over and that the $1.20 rate was the winner, with the meeting on November 12 to be devoted to formalizing this result.

■ The Government argues that, since the statute requires a signed report, a vote can never be conclusive until this has been done. This may be true; and, of course, there is no question but that an adjourned meeting has the capacity to reconsider a prior vote and to reach a different result. It is a capacity which must, however, be exercised with due observance of fair and reasonable standards of notice in general and, in particular, in accordance with the "terms of adjournment" referred to in the regulation applicable in this case. Respondents also assert that, since the Report embraces findings of fact, it must have been assumed by everyone on November 10 that new votes might follow upon an examination of the proposed findings. This is the kind of thing to which lawyers are trained to be alert. But we doubt that any of the laymen who made up the tripartite board ever dreamed that the matter of written findings would change the alignment of the last vote on November 10; and it is interesting to note that the Chairman, who voted against the $1.20 rate on November 10 and the $1.22 rate on November 12, found it possible to join in the findings of fact in the Report and to dissent only in respect of the rate determination. It seems clear that it was less the logic of the findings than it was the make-up of the meeting on November 12 that resulted in the changed rate.

We impute no improper motivations, nor do we suppose that one segment of the tripartite process is more susceptible to temptations of this kind than another. The point is that Section 511.12(b) is directed towards the removal of these opportunities. Certainly the spirit of the tripartite approach could not long survive the yielding by partisan participants to such allurements.

---

4. In Sangamon Valley Television Corp. v. United States, 106 U.S.App.D.C. 30, 33, 269 F.2d 221, 224 (1959), this court admonished that "agency action that substantially and prejudicially violates the agency's rules cannot stand." See Jefferson Amusement Co. v. FCC, 96 U.S.App. D.C. 375, 378, 226 F.2d 277, 280 (1955); McKay v. Wahlenmaier, 96 U.S.App.D.C. 312, 320–321, 226 F.2d 35, 42–43 (1955); Pacific Molasses Co. v. FTC, 356 F.2d 386, 389 (5th Cir. 1966).

We think the departmental advice given to the Committee at the time not to go ahead with a change in the rate reflected legal realities as well as sound policy considerations. Because it was not taken, the wage order before us must be set aside.[5]

It is so ordered.

---

5. At oral argument both parties recognized that the following language in the prehearing stipulation, filed in, and approved by, this court, eliminated any possibility of a revival of the $1.20 rate:

The parties agree that there is no force or effect to the $1.20 minimum wage rate voted by Industry Committee No. 75 at its November 10, 1965 executive session, since the Committee did not adopt a report recommending such rate as required by 29 C.F.R. § 511.16.