**Michele L. ROBINSON, Plaintiff,**

v.

**R & R PUBLISHING INC., and Joseph M. Rees, Defendants.**

Civil Action No. 95–00833.

United States District Court, District of Columbia.

Aug. 26, 1996.*

* FOLLOWING THE ISSUANCE OF THE MEMORANDUM OPINION AND ORDER, AND DURING THE TRIAL ON THE DEFENDANTS' COUNTERCLAIM, THE WHOLE CASE WAS SETTLED AND DISMISSED.

**19**

Bruce A. McDonald of Dykema Gossett, P.L.L.C., Washington, DC, for Plaintiff.

Martin Lobel of Lobel, Novins & Lamont, Washington, DC, for Defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

On July 9–10, 1996, the Court took testimony, accepted the submission of evidence, and heard argument from the parties in the above-captioned case. Based on the pleadings, the testimony and argument, the entire record herein, and the law applicable thereto, and for the reasons expressed below, the Court shall enter final judgment for the defendants and against the plaintiff in the above-captioned case as provided herein.

### BACKGROUND

On May 3, 1995, the plaintiff, Michele L. Robinson, sued the defendants, R & R Publishing and Joseph M. Rees, alleging copyright infringement, unfair competition, false representation, fraud, breach of license, and common law unfair competition.[1] Robinson's allegations arise from her claim to ownership of a copyright in the work that is the subject of dispute in this case, entitled "Standards of Medical Care: The Comparative Guide to Medical Practice Guidelines and Outcomes Research" [hereinafter "Standards of Medical Care"]. The plaintiff seeks, among other things, a declaratory judgment that she owns the copyright to Standards of Medical Care

and seeks an injunction against infringement of that copyright by the defendants. On May 24, 1995, the defendants filed an Answer, denying any wrongdoing, claiming ownership to the subject work, and asserting several counterclaims, including breach of fiduciary duty, copyright infringement,[2] federal unfair competition, false representation, fraud, and common law unfair competition. The following relevant facts have been stipulated to or are uncontested by the parties.

Robinson is a highly skilled health care writer, journalist, and editor. The concept of creating Standards of Medical Care was Robinson's idea and was an outgrowth of work for a prior employer that she had done in her capacity as editor-in-chief of a newsletter called "Report on Medical Guidelines and Outcomes Research." During the summer of 1991, Robinson meet with Rees, a recognized expert in the healthcare field, to discuss a joint effort to produce Standards of Medical Care.

Together, Robinson, Rees, and Sherry J. Saunders, incorporated R & R Publishing, Inc., for the purpose of publishing Standards of Medical Care. On September 27, 1991, the organizational meeting of R & R was held pursuant to a waiver of notice signed by Robinson. At the meeting, Robinson was elected a director and vice-president and Rees was elected a director and president. The Articles of Incorporation were approved by the District of Columbia on October 2, 1991.

On September 28, 1991, Rees and Saunders, who owned all of the stock in R & R, entered into a contract with Robinson, giving her a one year option to purchase half of the stock in the corporation for $2500. Robinson never exercised that option. In October of 1991, a bank account for the corporation was opened and Robinson was listed as a signatory on the account. However, Robinson never exercised that authority and never issued any check on behalf of the corporation.

1. On June 19, 1995, the plaintiff amended her Complaint to include a claim for fraudulent procurement of copyright registration.

2. On May 29, 1996, the Court granted the plaintiff's Motion to Dismiss Count II of the defen-

dants' counterclaim for copyright infringement on the ground that the defendant had not alleged any act by the plaintiff that would constitute infringement.

Robinson's working relationship with the defendants during the relevant period of time existed solely for the purpose of creating, marketing, and selling Standards of Medical Care. Neither defendant ever had the right to assign any projects to Robinson other than her work on Standards of Medical Care. At all relevant times, Robinson had complete discretion over when and how long to work, provided that she complied with mutually agreed upon deadlines. Robinson was exclusively responsible for the decision to hire the individuals who assisted her in her work on Standards of Medical Care, including Pam Abbot and Gary Stephenson, both of whom were paid by R & R Publishing. The parties never executed a work-for-hire agreement, a written assignment, or any other document expressly transferring or assigning any interest or license in the copyright to Standards of Medical Care. During the time that Robinson was an officer and director of R & R, she received $48,875 as compensation for her work.

In April of 1992, Standards of Medical Care was first published by R & R, carrying on its front page a copyright notice in the name of "R & R Publishing, Inc." At all times from and after the date of its first publication, the work carried on its front page a copyright notice in the name of "R & R Publishing, Inc."

As 1992 drew to a close, the relationship between Robinson and Rees deteriorated. Robinson attempted unsuccessfully to negotiate with Rees over the terms and conditions of her continued involvement with R & R. On September 1, 1993, although not authorized to do so by the defendants, Robinson filed an application in her name with the United States Register of Copyrights for copyrights to Volume I of Standards of Medical Care. Robinson's revised applications were granted about one year later, as Copyright Registration Nos. TX 3-603-962, TX 3-804-048, and TX 3-804-047. On September 2, 1993, Robinson's attorney sent a letter to Rees, which stated: "This letter is formal notice that Ms. Robinson has decided to terminate her interest in R & R Publishing as both an Officer and Director of the corporation." On September 13, 1993, R & R submitted an application to the United States Register of Copyrights for registration of its copyright in and to Standards of Medical Care, which was granted in United States Copyright Registration No. TX 3-709-706.

Among other things, the plaintiff seeks a remedy for the alleged infringement of her copyright by the defendants subsequent to the time she resigned as an officer and director of the corporation. She seeks to enjoin the work's further publication by the defendants. Furthermore, she seeks declaratory judgment that the copyright is hers and seeks the cancellation of the registration of the work in R & R's name. The defendants believe that they are entitled to continue publishing Standards of Medical Care without compensating Robinson in any additional sums. They believe they have the exclusive and permanent right to the continuing stream of income generated by the sales of Standards of Medical Care into the indefinite future.

The defendant R & R claims it is entitled to judgment in its favor on the ground that the plaintiff breached her fiduciary duty as an officer and director by her claim of copyright ownership. The defendant Rees claims he is entitled to judgment on the ground that the plaintiff has failed to allege any facts that would justify holding Rees personally liable for any actions he took as an officer and director of R & R Publishing, Inc. In her Opposition, the plaintiff argues that the defendants' positions are not supported by the law.

At all times pertinent to the plaintiff's claims herein, she was an officer and director of the defendant corporation. The plaintiff incorporated the corporation, although she did not contribute to its initial financing. She had an opportunity to buy into the corporation, but declined to do so. She was paid by the corporation, and as an officer and director, she had a fiduciary obligation to provide to the corporation not only services, but her work product. The Court shall hold that the plaintiff violated this fiduciary duty by her actions and as more particularly hereinafter set forth.

## DISCUSSION

### I. THE PLAINTIFF USURPED A CORPORATE OPPORTUNITY WHEN SHE SOUGHT COPYRIGHT PROTECTION FOR STANDARDS OF MEDICAL CARE IN HER OWN NAME.

 It is fundamental that officers and directors of a corporation occupy a fiduciary relationship to the corporation and its stockholders and must act in utmost good faith in managing corporate affairs. *Mayflower Hotel Stockholders Protective Comm. v. Mayflower Hotel Corp.*, 173 F.2d 416, 418 (D.C.Cir.1949) (citations omitted). A corporate fiduciary's duty of loyalty to the corporation undergirds the "corporate opportunity doctrine," which, generally stated, provides that

> if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of [the] corporation, the law will not permit [the officer or director personally] to seize the opportunity.... And, if, in such circumstances, the interest of the corporation are betrayed, the corporation may elect to claim all of the benefits of the transaction for itself, and the law will impress a trust in favor of the corporation upon the property, interests, and profits so acquired.

*Guth v. Loft*, 23 Del.Ch. 255, 5 A.2d 503, 511 (1939).

Because R & R is a District of Columbia corporation, the Court looks to District of Columbia law to ascertain the fiduciary obligations of its officers and directors. *See Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259, 1268 (D.C.Cir.1972). However, the Court knows of no occasion when the District of Columbia Court of Appeals has addressed a situation similar to that presented here. Nevertheless, the Court assumes the District of Columbia would follow the general and well-established corporate opportunity doctrine as expressed above. *Cf. Int'l Underwriters, Inc. v. Boyle*, 365 A.2d 779 (D.C. 1976).

The corporate opportunity doctrine has been applied to the situation at issue here by a district court in the unreported case *Ampersand Productions, Inc. v. Stahl*, 1986 WL 2449 (E.D.Pa.1986). In that case, two principals of a close corporation contested ownership of a copyright to a musical play. The Court held that, although the defendant in that case owned the copyright to the play, by producing the play under the aegis of a separate company, the defendant usurped a business opportunity properly belonging to the corporation. *Id.*

In an analogous case, *McKay v. Wahlenmaier*, 226 F.2d 35 (D.C.Cir.1955), the Court of Appeals of this Circuit applied the corporate opportunity doctrine when it held that a fiduciary of a corporation misappropriated a land lease that the fiduciary knew would be appropriate for the corporation to acquire since it was in the line of the corporation's business. The Court noted that a fiduciary owes an obligation to a corporation to

> develop [an] opportunity for it and in its behalf, and to refrain from doing anything that might work injury to [the corporation] or deprive it of profit or advantage which [the fiduciary's] skill, knowledge and ability might personally bring to it or enable it to realize in the reasonable exercise of its power.

*McKay*, 226 F.2d at 45 (citations and quotations omitted).

*Ampersand* being sufficiently persuasive and *McKay* sufficiently analogous, the Court shall hold for the defendant R & R in the case at bar. The two cases cited by the plaintiff in opposition to summary judgment, *Brooks v. Bates*, 781 F.Supp. 202 (S.D.N.Y. 1991), and *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355 (9th Cir.1994), are inapposite and unpersuasive. Those cases dealt with whether a copyright was transferred from one party to another and did not address the issue presented here with regard to the corporate opportunity doctrine.

The plaintiff, Michele L. Robinson, incorporated R & R, along with Rees and Saunders, for the purpose of publishing Standards of Medical Care. Robinson was a fiduciary, a director and vice president of the corporation. She was paid by the corporation. Using resources provided by the corporation, the plaintiff created the subject work, alone or in conjunction with others, while she was a fiduciary. The work was published by the corporation, bearing the copyright symbol and the name of the corporation. After relations between the plaintiff and Rees deteriorated, but while she was a corporate fiduciary, the plaintiff sought exclusivity for the work under the Copyright Act in her own name, for her personal benefit and directly adverse to the interests of the corporation to which she owed a fiduciary duty.

Even though the plaintiff claims to have been an "independent contractor," rather than an "employee," and thus entitled to ownership as an author under the Copyright Act, that does not diminish or defeat the defense asserted to her claims under the corporate opportunity doctrine. The critical fact is that the plaintiff, at all times, had reason to know that her work product was to be owned by the corporation and not by any individual such as herself. Moreover, it was not until the plaintiff's relationship with Rees deteriorated that the issue of ownership was even raised. The Court is convinced, based on its judgment of the plaintiff's credibility as a witness, that she at all times knew that this work product was to be owned by the defendant corporation and was to be accomplished for its benefit, and not hers. By virtue of the plaintiff usurping a corporate opportunity by her actions, the Court concludes that Robinson holds the copyright for Standards of Medical Care in trust for the corporation, regardless of who authored the work within the meaning of the Copyright Act.

## II. BECAUSE THE CORPORATE DEFENDANT PREVAILS, THERE IS NO BASIS FOR HOLDING ITS PRESIDENT, DEFENDANT REES, VICARIOUSLY LIABLE.

The plaintiff seeks to hold Rees vicariously liable for the alleged copyright infringement

of R & R. *See Cass County Music Co. v. C.H.L.R. Inc.,* 896 F.Supp. 904, (E.D.Ark. 1995), *aff'd in part and vacated in part,* 88 F.3d 635 (8th Cir.1996). Because R & R is not liable, there is no basis to hold Rees vicariously liable.

## CONCLUSION

For the foregoing reasons, the Court shall enter final judgment in favor of the defendants. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

As a final matter, the issue central to the dispute between the parties in this case is ownership of the rights to Standards of Medical Care. The defendants have admitted as much. However, the defendants have counterclaimed against the plaintiff for monetary damages. This counterclaim was not pressed at the trial. Therefore, the defendants' remaining counterclaims will be denied, without prejudice, pending further proceedings, if any are necessary.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 23 day of August, 1996,

ORDERED that judgment shall be, and hereby is, entered in favor of the defendants and against the plaintiff on the plaintiff's claim for copyright infringement; and it is

FURTHER ORDERED that judgement shall be, and hereby is, entered in favor of the defendants and against the plaintiff on the defendants' claim for usurpation of a corporate opportunity; and it is

FURTHER ORDERED that the corporation, R & R Publishing, Inc., and not the plaintiff, owns the copyright to Standards of Medical Care, and that the corporation is entitled to continue publishing Standards of Medical Care without compensating the plaintiff further; and it is

FURTHER ORDERED that any and all extant Motions shall be, and hereby are, declared MOOT; and it is

FURTHER ORDERED that the defendants' counterclaims shall be, and hereby are, DISMISSED without prejudice; and it is

FURTHER ORDERED that each party shall bear its own costs.