**Eleanor P. ASHLEY, as Personal Representative of the Estate of Charles D. Ashley, Plaintiff,**

v.

**Cecil D. ANDRUS, Secretary of U. S. Department of the Interior, Defendant.**

No. 79–C–60.

United States District Court, E. D. Wisconsin.

March 27, 1980.

**1320**

Scott W. Hansen, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., for plaintiff.

Patricia J. Gorence, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a civil action in which plaintiff Ashley challenges defendant's (Andrus) retroactive disqualification of Ashley from holding the lease she won in the government's oil and gas lottery. Under this procedure, the potential lessee files a drawing entry card which is considered simultaneously filed with other cards timely filed by other participants. The lottery participant files a drawing entry card for a specific parcel of land for which a lottery is to be held. If a drawing entry card is drawn first, the participant, if qualified, is entitled to enter into a lease contract for the parcel of land.

Both parties have moved for summary judgment. Such relief is appropriate since both parties are in substantial agreement as to the facts of this case. The question presented by the motions, then, is who is entitled to a favorable ruling under the facts. For convenience sake, the Court will adopt and, for the most part, set forth the factual review of the administrative law judges who denied plaintiff's appeal from the decision of the Montana State Office, Bureau of Land Management. *Estate of Charles D. Ashley*, 37 IBLA 367 (1978).

Eleanor P. Ashley is the widow and personal representative of the Estate of Charles D. Ashley. On June 2, 1978, the Montana State Office, Bureau of Land Management (BLM), rejected oil and gas lease offer M 40561 (ND) Acquired, for Parcel MT 789 for the reason that the applicant, Mr. Ashley, was deceased at the time of filing the application card.

The record shows that Mr. Ashley executed a service agreement with Resource Service Company (RSC) on November 18, 1977, authorizing RSC to complete and file all forms required for his participation in 240 simultaneous drawings for oil and gas leases. Mr. Ashley signed and returned all 240 cards to RSC prior to November 25, 1977. Thereafter, RSC filed cards on a monthly basis in Mr. Ashley's behalf. The agreement was for one year. Under the original agreement, Mrs. Ashley paid RSC a fee for its services in advance, in addition to agreeing to share an interest in any leases obtained by the filings.

A decision of the Interior Board of Land Appeals (Alfred L. Easterly, 34 IBLA 195 (1978)) found standard service agreements of this type to be in violation of the regulations concerning interested parties and multiple filings. Accordingly, in April 1978, RSC sent Mr. Ashley a modification of the agreement designed to conform the agreement to the requirements of the regulations. Mr. Ashley died February 8, 1978, and the modification was directed to his widow, the personal representative of his estate. On April 14, 1978, Mrs. Ashley signed and returned the modification to RSC. On April 21, 1978, RSC dated, addressed, and placed the parcel number on one of the cards previously signed by Mr. Ashley and filed it in the Montana State Office. The card was drawn No. 1 in the May 4, 1978, drawing.

BLM, in rejecting the offer, indicated that the regulations, 43 C.F.R. Part 3100, do not provide for filing applications in the name of deceased individuals. BLM also expressed incredulity over how Mr. Ashley could sign and date the drawing card on April 21, 1978, which was two months after his death.

On appeal, the Interior Board of Land Appeals affirmed the BLM holding that the

applicant was dead at the time of filing and thus there was no qualifed applicant. The board was unimpressed with the several arguments raised by plaintiff.

■ The threshold issue presented in this case is whether a personal representative of an estate is a qualified applicant. The regulations governing simultaneous offers, 43 C.F.R. §§ 3112.1–3112.5–2 and 43 C.F.R. §§ 3102.1–3102.9, do not specifically provide that an estate, through a personal representative, is a qualified applicant. Nevertheless, there are two sources for this Court to find that personal representatives are qualified applicants.

The procedures for simultaneous offers are set forth in 43 C.F.R. § 3112, et seq. Section 3112.3 of that subpart directs that the qualifications for participation are provided in subpart 3102 of 43 C.F.R. Among those qualified to apply · for a lease are guardians and trustees of minors. Persons acting in such a capacity have duties, responsibilities and powers very similar to that of a personal representative.

More importantly, under 43 C.F.R. § 3102.8 a lease will be issued to a personal representative of an estate, the probate of which has not been completed, "if the offeror dies before the lease is issued." In such a situation, in contrast to the present case, the offeror is living at the time of submission.

In addition to these two factors, apparently the government itself has no real opposition to the proposition that a personal representative is a qualified applicant. Consequently, the Court is drawn to the conclusion that a personal representative is a qualified applicant if he or she otherwise complies with the filing requirements.

The crux of the problem presented by the present case is whether the personal representative and thus the estate should be deprived of the fruits of the lottery win because of the fashion of filing the drawing entry card. Stated another way, the issue in this case is whether the personal representative adequately complied with the regulations governing the government's oil and gas lottery.

In moving for summary judgment, defendant Andrus relies upon the legal arguments utilized by the Interior Board of Land Appeals. First it argues, based upon the contract aspects of the lottery, that a deceased person is not qualified because the death of an offeror terminates the offer. Williston on Contracts § 62 (3d Ed. 1957). Under 43 C.F.R. § 3112.2–1, the filing of a drawing entry card constitutes an offer to lease and, defendant Andrus argues, Mr. Ashley's death terminated the offer he had made. Defendant's second argument is grounded in the law of agency. Anticipating that plaintiff might argue that RSC was an agent and as such was empowered to file the offer for Mr. Ashley, the government asserts that the agency failed at Ashley's death but, if it did not, the agency relationship violated the applicable regulations.

■ Under the rules of agency, "the death of the principal operates as an instantaneous and absolute revocation of the agent's authority or power, unless the agency is one coupled with an interest." 3 Am. Jur.2d *Agency* § 51 (1962). If the agent RSC did have an interest, however, that was not disclosed on the drawing entry card and, thus, pursuant to 43 C.F.R. § 3102.7, the lease could not issue to the estate. In either event, whether the agency terminated at death or whether it did not, defendant argues that plaintiff cannot rely on the agency to make a valid offer.

While the Court agrees with the legal analysis of the Interior Board of Land Appeals, however, the result is subject to question because the board disregarded what actually occurred. Their conclusion would be correct if the card signed by Mr. Ashley had been filed by RSC without the participation of the personal representative. Absent her authorization, the agent would have been making an offer for a deceased principal and the law of agency and 43 C.F.R. § 3102.7, as properly found by the board, would deny plaintiff of the lease.

■ Reviewing the facts here, the participation of the personal representative simply cannot be ignored. On April 14, 1978, plaintiff, as the personal representative of

Ashley's estate, signed a modification of the 1977 agreement between RSC and Mr. Ashley. Such an action was appropriate and within her power as a representative of the estate under Wisconsin Law. She had the statutory authority and duty under Wis. Stat. § 857.03 to carry out the decedent's contracts. *See State v. Circuit Court for La Crosse County*, 177 Wis. 548, 188 N.W. 645 (1922). That is precisely what she was doing in signing the altered agreement.

It is significant that Mrs. Ashley, as representative, signed the altered agreement because, in this Court's considered opinion, that made RSC her agent in her capacity as the estate's personal representative. As such, RSC filed the drawing entry card for the estate through the personal representative and not for the deceased who was incapable of making an offer. Consequently, as mentioned earlier, the issue in this case is whether plaintiff properly complied with the filing requirements for participation in the government's oil and gas lease lottery.

Two problems with the filing here must be considered in resolving the summary judgment motions. First, what is the effect of Mr. Ashley having signed the card rather than Mrs. Ashley as personal representative on the estate's behalf. The second problem involves the failure of plaintiff to disclose that she was acting on behalf of Mr. Ashley's estate.

The first problem is, in the Court's opinion, no problem at all. The personal representative here was merely utilizing the cards prepared by RSC but signed by Mr. Ashley. In effect, Mrs. Ashley adopted her decedent's signature thus becoming bound to the information contained in the card. It was reasonable for her to assume that this was acceptable in light of the regulation, 43 C.F.R. § 3102.8, which permits issue of the lease to a personal representative if the offeror dies before the lease is issued. As pointed out by plaintiff in her brief, there are no regulations, statutes or cases indicating that there is anything wrong with the procedure utilized here. Mr. Ashley had already started the process of filing cards on a monthly basis. A complete set of signed cards was in the possession of RSC who was authorized by the personal representative to continue filing the cards. The applicable regulations are such that Mrs. Ashley could reasonably assume that she need not supply new cards to participate in the drawing.

The Interior Board of Land Appeals, in affirming the BLM, expressed the fear that the signature card as submitted left no "person who attested to the veracity of the statements on the card, nor one who would be bound to the lease." By adopting Mr. Ashley's signature, plaintiff bound the estate through her to the lease. Thus, the latter problem is solved. The former concern, while crucial to the purposes of the Mineral Lands Leasing Act which is to promote diverse ownership of the leases and to prevent monopolies, is sufficiently served in a case such as this by requiring immediate disclosure of the true state of affairs as is required of estate representatives under an analogous section of the regulations discussed earlier. *See* 43 C.F.R. § 3102.8.

Having held that later timely disclosure, in light of ambiguous regulations, serves to protect the interests of the Mineral Lands Leasing Act, the failure of plaintiff to disclose at the time of filing that she was applying in the name of the estate presents no great difficulty. The lease can be issued to the appropriate party as provided under 43 C.F.R. § 3102.8. In so saying it is important to note that on May 17, 1978, the day plaintiff learned that the estate won the lottery, plaintiff, acting as personal representative, sent a letter to the defendant advising him that the estate had won the lease.

In ruling on the motions, this Court must consider the effects of two cases relied upon by the defendant, *McKay v. Wahlenmaier*, 226 F.2d 35 (D.C. Cir. 1955) and *Burglin v. Morton*, 527 F.2d 486 (9th Cir. 1976). Neither case provides aid to defendant.

In *McKay* an application was not denied as defective although the applicant Culbertson failed to disclose shareholder ownership in a corporation that held oil and gas leases in contravention of the regulation. Factually, what occurred is that a few days after Culbertson filed his application, another

shareholder, Irwin, filed an identical individual application which omitted to mention his ownership in the corporation. A few days later, the corporation filed its own card omitting the Irwin and Culbertson relationship. Although aware of Culbertson's actions and the fact that Irwin, Culbertson and the corporation were acting in collusion, the Secretary did not disqualify the application.

On appeal of the district court's reversal of the Secretary's decision, the court of appeals affirmed the lower court holding. It was impressed that Culbertson had acted on behalf of the corporation rather than himself and, thus, concealed an unfair situation. Therefore, the court in *McKay* concluded that the application should have been rejected. That case is inapposite to the present situation because of the strong element of wrongdoing totally absent in the present case.

The *Burglin* opinion is more difficult to distinguish because in that case the applicants committed no wrongdoing. There, the Secretary of the Interior rejected several lease applications because "the lease offerors could not be identified on the offer form due to an illegible signature." *Burglin v. Morton,* 527 F.2d at 487–488 (9th Cir. 1975). Subsequent to the rejection, after the signature defects were cured, Congress withdrew the lands from oil and gas lease availability.

Besides upholding the Congressional action, the Court approved the Secretary's rejection of the applications because of illegible signatures. Noting that the Secretary's regulations are entitled to deference, *Harvey v. Udall,* 384 F.2d 883, 885 (10th Cir. 1967), the Court held that the plaintiffs had not made a sufficient showing "to overcome the presumption of [the] validity of [the] administrative action." *Burglin v. Morton,* 527 F.2d at 490. It is important to note that the regulation relied upon by the Secretary required that "[e]ach offer must be filled in by typewriter or printed plainly in ink and signed in ink by the offeror. . . ."

43 C.F.R. § 3111.1–1.[1] In contrast, in the present case the regulations were unclear. In addition, 43 C.F.R. § 3102.8, as indicated earlier, could lead one to feel that filing in the name of the deceased was permissible. Consequently, the *Burglin* case provides no assistance to this tribunal.

In passing on this case, this Court is well aware that deference is to be given to the Secretary's interpretations of his regulations. *Harvey v. Udall, supra.* However, if the decision is clearly at odds with the regulations, or, as here, the regulations are sufficiently unclear to make the Secretary's denial patently unfair, then a court should be justified in overturning the Secretary's decision. To do less would work a patent injustice on an applicant who justifiably acted in a manner reasonable under then existing regulations.

In light of the foregoing the Secretary's denial of the lease to plaintiff must be reversed. Consequently, plaintiff's motion for summary judgment must be GRANTED and defendant's motion for summary judgment must be DENIED.