Elenore P. ASHLEY, as Personal Representative of the Estate of Charles D. Ashley, Plaintiff,

v.

James G. WATT, Secretary of the United States Department of the Interior, Defendant,

Paul E. Cash, Defendant.

No. 79–C–60.

United States District Court, E.D. Wisconsin.

Oct. 5, 1982.

Scott W. Hansen, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., David A. Veeder, Davidson, Veeder, Baugh, Broeder & Poppler, Billings, Mont., for Palmer Oil & Gas Co.

Charles H. Bohl, Asst. U.S. Atty., Milwaukee, Wis., for Dept. of Interior.

Earl L. Yeakel, III, Kammerman, Yeakel & Overstreet, Austin, Tex., for Paul E. Cash.

## DECISION AND ORDER

WARREN, District Judge.

### Factual Background

Currently pending before this Court are several motions which relate to the Court's decision in *Ashley v. Andrus,* 486 F.Supp. 1319 (E.D.Wis.1980), aff'd, 655 F.2d 105 (7th Cir. 1981). Foremost among them is plaintiff's motion for additional relief to protect the judgment which alleges that Paul E. Cash has collaterally attacked this Court's decision by commencing a collateral appeal within the Interior Department. A review of the facts which led to the *Ashley* decision will place these motions in context. The Court there stated:

> The record shows that Mr. Ashley executed a service agreement with Resource Service Company (RSC) on November 18, 1977, authorizing RSC to complete and file all forms required for his participation in 240 simultaneous drawings for oil and gas leases. Mr. Ashley signed and returned all 240 cards to RSC prior to November 25, 1977. Thereafter, RSC filed cards on a monthly basis in Mr. Ashley's behalf. The agreement was for one year. Under the original agreement, Mrs. Ashley paid RSC a fee for its services in advance, in addition to agreeing to share an interest in any leases obtained by the filings.

A decision of the Interior Board of Land Appeals (Alfred L. Easterly, 34 IBLA 195 (1978)) found standard service agreements of this type to be in violation of the regulations concerning interested parties and multiple filings. Accordingly, in April 1978, RSC sent Mr. Ashley a modification of the agreement designed to conform the agreement to the requirements of the regulations. Mr. Ashley died February 8, 1978, and the modification was directed to his widow, the personal representative of his estate. On April 14, 1978, Mrs. Ashley signed and returned the modification to RSC. On April 21, 1978, RSC dated, addressed, and placed the parcel number on one of the cards previously signed by Mr. Ashley and filed it in the Montana State Office. The card was drawn No. 1 in the May 4, 1978, drawing.

486 F.Supp. at 1320.

Paul E. Cash was the No. 2 drawee in that same lottery. On May 22, 1978 Cash filed a protest with the Montana State Office of the Bureau of Land Management (BLM). Among other objections, Cash stated that Ashley could not have properly completed the application card during the filing period in April 1978, since he had died on February 8, 1978. On May 25, 1978, Cash submitted a certified copy of Ashley's death certificate as supporting evidence. On June 2, 1978, the BLM, without affording Ashley's Estate an opportunity to respond to Cash's *ex parte* submissions, issued a decision rejecting the Estate's lease offer because the regulations did not provide for filing applications in the name of deceased individuals. It also expressed incredulity over how Ashley could have signed the card after his death. A copy of this decision was forwarded to Cash. On June 28, 1978, the BLM notified Cash that the Ashley Estate was appealing its decision to the Interior Board of Land Appeals (IBLA) and that BLM would hold in abeyance any action on Cash's protest pending final action on the appeal.

The Estate also notified Cash of the appeal. The Estate, assuming Cash to be an adverse party, conformed to 43 C.F.R. § 4.413, and served him with its notice of appeal, statement of reasons and supporting affidavits. Among the affidavits were those by Mr. Engle, an RSC representative, and Elenore Ashley, Charles Ashley's widow. Both stated Ashley had signed the lottery cards before his death. Mrs. Ashley's affidavit further pointed out that Ashley had been ill and under medication for some time before his death and that this would account for variations in his signature.

Although under 43 C.F.R. § 4.414 Cash was entitled to file opposing papers, he elected not to do so. The Interior Board of Land Appeals affirmed the BLM's rejection of the offer but on different grounds. It stated in its summary of the facts that Ashley had signed the card before his death, 37 IBLA 367, 369 (1978). Nevertheless, it determined that the offer was invalid since the offeror, Mr. Ashley, was deceased at the time of filing and therefore there existed no qualified applicant.

The Estate appealed the IBLA's decision to this Court. Cash received copies of the summons and complaint and again chose not to participate. This Court granted the Estate's motion for summary judgment holding that the Estate had properly adopted the decedent's signature and that it was qualified to hold the lease. In so doing, this Court explicitly adopted the factual findings of the IBLA, including its finding that Ashley had signed the lottery card.

Following this Court's decision, the Secretary of the Interior had 60 days to appeal. On the 55th day, Cash moved to intervene and filed a notice of appeal. In his attorney's affidavit in support of the motion to intervene, counsel argued that the defendant Secretary of the Interior would not adequately protect Cash's interest. "Further, there is absolutely no assurance that the [Secretary] will prosecute an appeal for this action." (Hansen Affidavit, Exhibit F at 2).

Before this Court could consider Cash's motion to intervene, the Secretary appealed to the Seventh Circuit, divesting this Court

of jurisdiction. However, in response to Cash's request for a ruling on the merits, this Court, in an order dated July 15, 1980, held that Cash's interests were identical to those of the Secretary, who had adequately represented those interests. The Court therefore concluded that if it had jurisdiction, it would nevertheless deny Cash's motion to intervene. Cash neither appealed that decision nor moved to intervene before the Seventh Circuit. In *Ashley v. Andrus,* 655 F.2d 105 (7th Cir.1981), the Court of Appeals affirmed this Court's decision finding the Estate qualified to hold the oil and gas lease.

On September 14, 1981, counsel for Mr. Cash wrote to the BLM requesting a formal decision on Cash's protest of May 22, 1978, which had been held in abeyance. The letter raised no new issues but simply stated that Cash believed that this Court and the Court of Appeals had not resolved all the issues concerning his protest. The BLM disagreed and on December 23, 1981, dismissed Cash's protest and issued the lease to Elenore Ashley as personal representative of the estate.

Thereafter, Cash appealed to the IBLA. The thrust of his argument to the Board was that the signature on the winning lottery card was not that of Charles Ashley. He offered the affidavit of a handwriting expert which stated that based on the material examined (extremely poor copies of the winning lottery card and a check purportedly signed by Charles Ashley), and "contingent upon an examination ... of additional standards known to be the signature of Charles D. Ashley," the expert found a probability that the two documents had not been executed by the same person. The documents on which the handwriting analyst relied were first served on Cash by the Estate in 1978 when it appealed BLM's decision to IBLA. Cash states in his current brief to IBLA that, due to his protest being held in abeyance, he did not have an opportunity to present evidence to the Interior Department earlier. (Hansen Affidavit, Exhibit N at 4).

Before turning to the pending motions, the Court notes as a preliminary matter that the Court has amended the caption of this case in two respects. First, the Court has changed the name of the defendant Secretary of the Interior from Cecil D. Andrus to James G. Watt. Rule 25(d)(1) of the Federal Rules of Civil Procedure provides that when a public officer ceases to hold office, the action continues with his successor automatically substituted as a party. Second, the Court has added Paul E. Cash as a defendant. By order dated April 12, 1982, the Court granted plaintiff's motion to join Paul E. Cash as an additional defendant, a motion which Mr. Cash did not oppose.

Foremost among the motions currently pending before the Court is plaintiff's motion for additional relief to protect the judgment. In response, defendant Cash has made a motion to dismiss for failure to state a claim under Rule 12(b) and for failure to comply with Rule 65(c). Plaintiff has also made a motion under Rule 25(c) to substitute Palmer Oil & Gas Company (Palmer) for the Estate of Charles D. Ashley as plaintiff in this action.

### Motion to Substitute Plaintiff

Considering the motion to substitute plaintiff first, the Court notes that neither Cash nor the Secretary[1] opposes the motion. Movant states that the Ashley Estate assigned its oil and Gas lease to Palmer on December 24, 1981, reserving only a 5 percent royalty interest in the event Palmer's development of the lease ultimately proves successful. Since Palmer is the real party in interest, the Court grants plaintiff's motion for a substitution of Palmer as plaintiff in this action.

### Plaintiff's Motion for Additional Relief to Protect the Judgment and Defendants' Motion to Dismiss

Turning to the more substantial motion before this Court, plaintiff argues that

---

1. The Secretary informed the Court that it would take no position on any of the pending motions.

Cash's current appeal to the IBLA is a collateral attack upon this Court's judgment in *Andrus v. Ashley.* Plaintiff points out that, unless this Court intervenes, Cash could appeal any decision of the IBLA to another district court and ultimately to another court of appeals. Palmer therefore moves for additional relief to protect the judgment in the form of a permanent injunction restraining the defendants from contesting the Estate's adjudged status as the qualified winner of the May 4, 1978, lottery.[2]

Plaintiff urges this Court to enjoin defendants either under its inherent ancillary jurisdiction to protect prior judgments, *Dugas v. American Surety Co.,* 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720 (1937); *Caspers v. Watson,* 132 F.2d 614, 615 (7th Cir.1942), or under the All Writs Act, 28 U.S.C. § 1651(a), *Kentucky Fried Chicken v. Diversified Packaging,* 552 F.2d 601, 603 (5th Cir.1977); *Hamilton v. Nakai,* 453 F.2d 152, 157 (9th Cir.1972). The Court does not doubt that it has the authority to enjoin collateral proceedings that jeopardize rights protected by its prior judgments. However, as the cases cited above demonstrate, this authority is generally exercised only to enjoin persons who were parties to the prior litigation, *i.e.,* those who should be bound by the prior judgment.

Defendant Cash argues that enjoining his present appeal to the IBLA (and his potential access to another district court and court of appeals) would be a denial of due process because (1) he was not a party to the *Ashley* proceeding; (2) the Secretary had no authority to represent his interest in Ashley, or if such authority existed, the representation was not adequate; and (3) the appeal before the IBLA raises a different cause of action than that previously litigated. Finally, Cash maintains that an injunction would violate the doctrine of separation of powers because administrative remedies have not been exhausted.

The Court will address defendant Cash's due process argument first. It is a basic principle of law that parties to an action are bound by the judgment.

> This central proposition is balanced by the rule that ordinarily nonparties are not bound. Some substantial justification must be found to justify preclusion of a nonparty. Perhaps the most obvious justification is found in cases that extend preclusion to persons who are not formal parties to the first litigation but who participated so extensively that they assumed a de facto role as actual parties.... A second major concept is found in a variety of rules that extend preclusion to persons who somehow were represented in the first litigation. Representation is found most readily in traditional settings of private or official appointment .... Authorization, ratification, or consent may serve the same purpose .... A small number of recent cases have struck out beyond these established areas to adopt a principle of "virtual representation," under which preclusion may be asserted simply on the ground that the issues have been well litigated by a party who had a close identity of interests with the person to be bound.

18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 4448 (1981) (footnotes omitted); *see also* Restatement (Second) of Judgments, § 62 (1982).

Professors Wright and Miller expand on the notion of virtual representation in this way:

> The broadest form of this theory would preclude relitigation of any issue that had once been adequately tried by a person sharing a substantial identity of interests with a nonparty .... All of the cases that in fact preclude relitigation by a nonparty [on the basis of virtual representation] have involved several factors

---

**2.** Upon the stipulation of plaintiff and defendant, Secretary of the Interior, this Court entered a preliminary injunction on March 23, 1982, enjoining the Interior Department, including the IBLA, from considering any matter which questioned the right of the Ashley Estate to the lease here at issue. The preliminary injunction was to remain in effect until resolution of the motion for additional relief. No bond was required.

in addition to apparently adequate litigation by a party holding parallel interests. Many of these factors present reduced elements of other nonparty preclusion theories. Thus the nonparty has often participated in the prior action in some way, or seems to have consented to treat it as a test case, or has engaged in deliberate tactical jockeying, or has some close relationship to a party.

C. Wright, A. Miller, & E. Cooper, *supra*, § 4457.

Under the unique facts of this case, the Court finds that it is not a violation of due process to bind defendant Cash to its prior judgment in *Ashley v. Andrus.* It is the law of that case that Cash's interest was adequately represented by the Secretary. In a memorandum and order dated July 15, 1980, ruling on Cash's motion to intervene after judgment in *Ashley v. Andrus,* this Court stated:

Mr. Cash's motion would also be denied on the ground that his interest has been adequately served by the government .... The ultimate interests of the government and Mr. Cash are identical. Both seek to divest Mrs. Ashley of any interest in the lease. Beyond that, both seek to have the lease awarded to the party most deserving it.

When the interest of the absentee is identical with that of one of the existing parties, representation will be presumed adequate unless special circumstances are shown. (Citation omitted). Mr. Cash has shown no special circumstances.

Finally, intervention has been allowed in actions in which the United States, or some governmental agency, represents the public interest only when a very strong showing of inadequate representation has been made (citation omitted). Mr. Cash has made no such showing.

The Court is persuaded that the representation of Mr. Cash's potential interest has been adequately served by the Department of the Interior. The Department successfully presented its position twice in administrative hearings and offered a solid position before this Court.

Consequently, the Court would deny Mr. Cash's motion for intervention if it had jurisdiction to rule upon the motion.

The Court does not believe, however, that this identity of interests would be sufficient to bind Cash without the additional factors present in this case.

First, Cash has participated in this case directly, as well as vicariously through the Secretary. By filing his protest with the BLM on May 22, 1978, and submitting supporting evidence on May 25, he triggered the BLM decision adverse to the Estate. After this direct participation, the Estate correctly believed Cash to be an adverse party and so, in compliance with 43 C.F.R. § 4.413, served him with notice of its appeal to IBLA. Thereafter, under 43 C.F.R. § 4.414, Cash was entitled to appear and present evidence. He chose not to do so, relying instead on the record he had created and the BLM decision favorable to his position. The Interior Board of Land Appeals has itself addressed the effect of such nonparticipation in the administrative review procedure.

In *Donald W. Coyer,* 50 IBLA 306 (1980), a case very similar to the one at bar, Coyer won the oil and gas lottery and Easterday finished second. Easterday claimed Coyer's lottery card was invalid. The BLM disagreed and dismissed Easterday's protest. He then appealed to the IBLA, serving Coyer with copies of his notice of appeal and brief. Although Coyer was entitled to participate in the appeal, he chose not to do so. IBLA reversed the BLM and directed it to disqualify Coyer's winning card. After BLM implemented IBLA's decision, Coyer attempted to appeal the disqualification of his card to IBLA.

Engle's [who was Coyer's filing agent] and Coyer's effort to appeal the rejection of Coyer's offer pursuant to this Board's decision in *Easterday* was barred by his [Coyer's] failure to participate in the review procedure when this matter was properly before the Board. Coyer was named as an "adverse party" in BLM's decision rejecting Easterday's protest. As such, he was entitled to receive copies

of any notice of appeal and supporting statement of reasons filed by Easterday, in order to allow him the opportunities to defend his interest by filing an answer to this appeal. 43 CFR 4.413, 414. The record shows that Easterday served these documents on Coyer as required, and Engle and Coyer knew that the validity of Coyer's offer was being litigated before the Board pursuant to Easterday's appeal .... [H]aving failed to participate in Easterday's appeal, Coyer may not attack the results of this appeal by filing a new appeal of his own to this Board as a matter of res judicata.... It is appropriate to apply res judicata to bar a suit for judicial review of an agency decision by the affected person, where he had been given an opportunity to challenge the decision within the agency's appellate framework but has elected not to exercise his opportunity by taking an appeal. (Citations omitted.) Coyer and Engle were given the opportunity to litigate the validity of Coyer's offer by participating in the quasi-judicial appellate proceeding initiated by Easterday, and knowingly and deliberately elected to forego this right, thus rendering our decision in Easterday final and barring a collateral attack on its efficiency (footnotes omitted).

50 IBLA at 311–12; *see also Western Slopes Gas Co.,* 43 IBLA 259 (1979).

It is clear that Cash undertook some direct participation in this controversy. In addition, when he chose not to continue that participation in the administrative appeal procedure, he effectively foreclosed any future appeal to the IBLA on this controversy.[3]

When the Estate appealed to this Court, Cash was again served with notice but chose to rely on the Secretary's representation. It was only after this Court ruled adversely to Cash and when it appeared that the Secretary might not undertake an appeal, that Cash sought to intervene. In his brief in support of his motion to intervene, Cash stated, "There is no doubt that if this Court's *Memorandum and Opinion* of March 27, 1980, is sustained on appeal, Cash will have no interest whatsoever in the lease." This statement appears to the Court to be a tacit consent to be bound by this Court's judgment. In addition, Cash's failure to move to intervene before this Court until the eleventh hour, his failure to move to intervene before the Seventh Circuit after an appeal was taken, and his request to the BLM to rule on the four year old protest letter seem to be exactly the type of "deliberate tactical jockeying" to which Professors Wright and Miller refer. In sum, the Court believes that these factors, varying degrees of participation, consent and tactical maneuvering, combined with the Secretary's adequate representation of Cash's interest at all stages of this proceeding, require that Cash be bound by this Court's judgment in *Ashley v. Andrus.* The Court has no doubt that Cash has had every opportunity to litigate this controversy and therefore has been afforded due process.

The Court is not impressed with Cash's two remaining arguments, that his current appeal raises a new cause of action and that administrative remedies have not been exhausted. As is apparent from the Court's summary of the facts of this case, the "new evidence" on which Cash relies to claim that Ashley's signature may have been a forgery is neither new nor evidence. The documents on which Cash's expert opines have been in Cash's possession since the Estate first appealed BLM's denial of the lease in 1978. He has had ample opportunity to present that opinion before now. In addition, the expert's heavily qualified statement based on poor reproduction of the documents can hardly be said to "prove" anything. But these reservations aside, the

---

[3] To be more precise, he is not foreclosed from an appeal, but from a successful appeal. The BLM has already ruled that the issues raised in Cash's initial protest were resolved by the courts. Based on *Coyer,* the IBLA would rule that the matter is res judicata.

The point of plaintiff's request for injunctive relief, of course, is to avoid the expenditure of time and money that would be required to argue res judicata to the IBLA, and possibly to another district court and court of appeals.

most fundamental problem with Cash's "new" cause of action is that it ignores that this Court adopted the facts as determined by the IBLA administrative law judges. 486 F.Supp. at 1320. One of those facts is that Charles Ashley *signed* the winning lottery card. Therefore, the question of the signature's authenticity has already been determined by this Court. There is no new cause of action.

As for Cash's separation of powers argument, to say that administrative remedies have not been exhausted in this case is ludicrous. Both BLM and IBLA ruled on this controversy before this Court became involved. There is no merit to defendant Cash's argument that enjoining further litigation of this lease violates separation of powers principles.

Finally, Cash's motion to dismiss based on movant's failure to comply with Rule 65(c), which requires security when a preliminary injunction is granted, is inappropriate here. The parties stipulated to the entry of the preliminary injunction under which no bond was required. Although Cash was not then a party, in view of the Court's granting here of permanent injunctive relief, no damage has been sustained by either defendant as a result of the preliminary injunction.

To summarize, the Court GRANTS plaintiff's motion to substitute Palmer Oil & Gas Co. as plaintiff in this action. The Court GRANTS plaintiff's motion for additional relief to protect the judgment. The Court DENIES defendant Cash's motion to dismiss plaintiff's motion for additional relief.

IT IS HEREBY ORDERED that the defendants, Secretary of the Interior and Paul E. Cash, together with their agents and assigns, are permanently enjoined from contesting or resolving any matter pertaining to the right of the Estate of Charles D. Ashley or its assign, Palmer Oil & Gas Co., to be deemed qualified to win the government's oil and gas lottery and to receive and hold the oil and gas lease to Parcel MT 789 [M 40561 (N.D.) Acq.].