**JERRY VOGEL MUSIC COMPANY, and G. Schirmer, Inc., Plaintiff,**

v.

**WARNER BROTHERS, INC., Defendant.**

No. 80 Civ. 6502 (HFW).

United States District Court,
S. D. New York.

March 22, 1982.

Rafferty Grainger Rosenbloom & Drew, New York City, for plaintiff Jerry Vogel Music Co.; Milton M. Rosenbloom, New York City, of counsel.

Paskus, Gordon & Hyman, New York City, for plaintiff G. Schirmer, Inc.; Katherine J. Trager, Walter M. Volpi, New York City, of counsel.

Coudert Brothers, New York City, for defendant; Carleton G. Eldridge, Jr., Dennis R. Pearson, New York City, of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

Plaintiffs, Jerry Vogel Music Company ("Vogel") and G. Schirmer, Inc. ("Schirmer"), claiming to be the owners of the renewal copyrights to the poem "Trees" and the song "Trees" have brought this action against defendant Warner Brothers, Inc., ("Warner"), for infringing use of the first one minute and thirty seconds of the song in a motion picture entitled "The Inlaws." After discovery was complete, defendant moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that both the poem and the song are in the public domain.

Fed.R.Civ.P. 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court must resolve any doubts in favor of the party opposing the summary judgment motion. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978).

After reviewing the affidavits, documents and depositions submitted on this motion, I conclude that there are no genuine issues of material fact concerning the validity of the copyrights in dispute in this case. Moreover, upon the undisputed facts, I find that the issues presented may be decided as a matter of law according to the interpretation of the Copyright Act preceding the 1976 amendments. *See id.* at 35.

The facts as either agreed or admitted are as follows:

Prior to August 1913, Joyce Kilmer wrote a poem titled "Trees". This poem was published in a periodical titled "Poetry, A Magazine of Verse," Vol. II, No. 5 on or about August 1, 1913. It was one of many poems by different authors published in that magazine and it appeared on page 160. On August 4, 1913, Harriet Monroe, author and publisher of the periodical, filed an application for copyright on the periodical dated August 1, 1913, and a Certificate of Copyright Registration bearing legend class BXXC No. 288354 was issued by the United States Copyright Office on August 13, 1913. The cover page of this volume contains the legend "Copyright 1913 by Harriet Monroe". The first item in the contents is a poem titled "A Woman at Dark". It appears on page 153. On that page, there appears the legend (C) Cl. B288354.

Joyce Kilmer, author of "Trees" was killed on or about July 1918 during a battle in France during World War I. He left surviving a widow, Aline Kilmer, two sons, Kenton and Christopher Kilmer, and a daughter, Deborah Kilmer known as Sister Michael, O.S.B.

On May 26, 1913, before publication of "Trees" in the August 1913 issue of "Poetry; A Magazine of Verse," Mr. Kilmer wrote a letter to Harriet Monroe as follows:

Mahwah, New Jersey
May 26th, 1913

Miss Harriet Monroe:
543 Cass St.
Chicago, Illinois

My dear Miss Monroe:

I thank you for your note of May 24th. Six dollars will satisfy me for "Trees". I like the line about "a nest of robins in her hair" but if it offends you seriously you may omit it and its predecessor.

I was born December 6th, 1886, in New Brunswick, New Jersey. I graduated from Columbia University in 1908, taught English and Latin in the Morristown High School for a year and then came to New York and became one of the editors of the Standard Dictionary.

During the past winter I was literary editor of The Churchman. I am a regular contributor to the Times Review of Books and the Literary Digest.

Yours sincerely,

Joyce Kilmer

On July 7, 1914, he wrote another letter on The New York Times stationery which read:

July 7, 1914

Dear Miss Monroe:

May I reprint my poems "Trees" and "Easter", which originally appeared in Poetry; A Magazine of Verse, in my book "Trees and Other Poems", to be published next September by George H. Doran Company? Of course, acknowledgement of the privilege will be made in the book.

Yours sincerely

Joyce Kilmer

While these two documents have been objected to on the grounds of laches, relevancy and authenticity, the court considers them to be the singular pieces of evidence of the intent with which the poem initially was published and the nature of the relationship between Kilmer and Miss Monroe with respect to the poem "Trees". *See Kaplan v. Fox Film Corp.*, 19 F.Supp. 780 (S.D.N.Y.1937). Further, there can be no doubt as to the authenticity of the documents. The signatures on the letters compare favorably and Kilmer's use of "The New York Times" stationery ties in neatly with the abbreviated autobiographical sketch contained in his letter of May 26, 1913. These letters are further reinforced by the biographical sketch published by Robert Cortes Holliday, Kilmer's Literary Executor, dated September 13, 1918. It should also be noted that, true to his word in the book "Trees and Other Poems" by Joyce Kilmer published by Doubleday Doran, Kilmer acknowledged permission to reprint the poems and mentioned "Poetry, A Magazine of Verse."

It seems to me that the ascertaining of intent also may flow from the expression of the person on the other end of the transactions, Harriet Monroe. In her autobiography, "A Poet's Life" published in 1938, on page 386, Chapter 32, Discoveries, she wrote:

The two most widely quoted poems we ever printed, Helen Hoyt's "Ellis Park" and Joyce Kilmer's "Trees," appeared on consecutive pages during our first year, when Kilmer wrote, "Six dollars will satisfy me for 'Trees.'" For "Trees," which has coined money for publishers, composers, singers, radio people—everybody but the author, who was killed soon after, and the magazine which first presented it. The head of a motto-card firm told me long after that for years he had paid sixteen hundred dollars or more annually in royalties to its publisher, to be shared with the poet's estate. That is what it means to write two lines which the people take to heart and can never forget.

From the foregoing, it is clear that under sections three and twenty of the Copyright Act of 1909, Miss Monroe's copyright covered Kilmer's poem "Trees". 17 U.S.C. §§ 3 & 20 (1947 ed.); *see Goodis v. United Artists Television, Inc.*, 425 F.2d 397, 399–403 (2d Cir. 1970). In my opinion, Harriet Monroe held the copyright in trust for the author when she first published the poem "Trees". *See id.* at 400.

Since there is no proof to the contrary, I must assume that Mrs. Kilmer was the person who became the beneficiary of that trust upon Mr. Kilmer's death. As such beneficiary, there being nothing to the contrary, she had the right to authorize the composer Oscar Rasbach to use the poem in connection with his composition "Trees"

even though Harriet Monroe did not transfer the copyright to Mrs. Kilmer until October 14, 1931.

The song "Trees" was first published by G. Schirmer Music Stores, Inc. on or about March 18, 1922. The application for copyright is dated March 22, 1922. The only written document pertaining to the transfer of rights from Rasbach to Schirmer is a document entitled "Substitute Contract" dated March 23, 1922. It is the claim of Warner that since this document contains a disclaimer of any other transfer, the first publication having preceded it in date, the song is in the public domain.

It is well-settled, however, that the transfer of the "common law copyright" in unpublished works did not have to be in writing but could be oral or inferred from conduct. Indeed, possession of a manuscript has been held to be sufficient to establish evidence of the publisher's ownership rights as against a bare infringer. *Houghton Mifflin Co. v. Stackpole Sons, Inc.*, 104 F.2d 306 (2d Cir.), *cert. denied*, 308 U.S. 597, 60 S.Ct. 131, 84 L.Ed. 499 (1939); *Freudenthal v. Hebrew Publishing Co.*, 44 F.Supp. 754 (S.D.N.Y.1942).

Since the sequence of events in and of themselves (publication March 18; Registration, March 22; substitute contract March 23) bespeak of an ongoing relationship between the parties commencing before the date of first publication, an inference of the transfer of the common law copyright prior to March 18, 1922 is fully justified.

Contrary to defendant's argument, since the substitute contract merely divested Rasbach of all title and interest in the composition "Trees" rather than assigned a statutory copyright in that composition, the contract did not have to be recorded under the law then applicable. The rule of *Group Publishers, Inc. v. Winchell*, 86 F.Supp. 573 (S.D.N.Y.1949), has no application to the circumstances presented by that transfer. Again, this was especially so since the transfer of rights did not have to be in writing and thus could not be recorded.

Finally, no one could possibly have been misled or was misled by the method here used to secure copyright. As noted by Judge Learned Hand:

> We are unwilling to allow a barefaced infringer to invoke an innocent deviation from the letter [of the notice provisions] that could not in the least have prejudiced him or the public.

*National Comics Publications, Inc. v. Fawcett Publications, Inc.*, 191 F.2d 594, 602 (2d Cir. 1951).

Moreover, where principles compelled under the Copyright Act of 1976 are not precluded by decisions rendered under the 1909 Act, those principles should be implemented to the extent possible. *See Rohauer v. Killiam Shows, Inc.*, 551 F.2d 484, 494 (2d Cir.), *cert. denied*, 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977); *Goodis v. United Artists Television, Inc.*, 425 F.2d 397, 402–403 (2d Cir. 1970). Section 406(a) of the 1976 Act provides that "where the person named in the copyright notice on copies ... distributed by authority of the copyright owner is not the owner of the copyright, the validity and ownership of copyright is not affected." 17 U.S.C. § 406(a). Accordingly, under the circumstances of this case, the principles of the 1976 Act should be implemented to avoid a possible forfeiture of copyright resulting from a five day lapse between the date when Warner claims Schirmer acquired title under the substitute contract and the date of first publication. *Accord, Fantastic Fakes, Inc. v. Pickwick International, Inc.*, 661 F.2d 479, 487 (5th Cir. 1981).

In view of my conclusions above, both copyrights are sustained as valid. Defendant's motion for summary judgment on the ground that the copyrights are in the public domain are denied. Partial summary judgment is granted for plaintiffs on the issues of the validity of the copyrights.

SO ORDERED.