**Frank C. BROOKS, Jr., Plaintiff,**

v.

**William E. BATES, Defendant,**

**and**

**Knowledge Engineering Incorporated, Nominal Defendant.**

No. 89 Civ. 4478 (CSH).

United States District Court, S.D. New York.

Nov. 27, 1991.

Chapman, Moran, Hubbard & Zimmermann (John Haven Chapman, of counsel), New York City, for Brooks.

Jonathan D. Wallace, New York City, for Bates.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is a private shareholder derivative suit, brought by plaintiff Frank C. Brooks, Jr. pursuant to Rule 23.1, Fed.R.Civ.P., alleging violations of federal and common law copyright and trademark laws, misappropriation of trade secrets, unfair competi-tion, conversion, and other state law claims, including recently asserted claims for breach of contract and unjust enrich-ment. Subject matter jurisdiction is said to be founded upon the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a); and with respect to the state law claims, upon principles of pendent jurisdiction and diversity of citizenship.

Defendant William E. Bates moves under Rules 12 and 56 to dismiss the first cause of action alleged in the complaint, the first through fifth affirmative defenses to defendant's counterclaims, and the counterclaims asserted by plaintiff in his reply to defendant's counterclaims.

## BACKGROUND

According to the complaint, in April 1988 Brooks and Bates formed a computer software company, Knowledge Engineering Incorporated ("KEI"), the nominal defendant. The stated purpose of KEI was to develop, market and service computer software and hardware for the Apple computer. Brooks became the president, treasurer, and a director of KEI, owning 49% of the common shares of the company. Bates became a director and secretary of KEI, and the owner of 51% of the shares. Brooks is a resident of Connecticut. Bates is a resident of New York. KEI is a Connecticut corporation, formally incorporated in that state on December 27, 1988. The complaint alleges at ¶ 7 that KEI's principal product currently in development is a color separation system or software package under the copyrighted name of ColorSystem I. KEI is also alleged to market copyrighted software systems under the trade name Just-Text.

Plaintiff attached to his complaint copies of five certificates of copyright registration. Each certificate refers to a computer program. The titles of the registered programs are: JustText; Document Manager; The Lithographer; Lithographer II; and Mac II Rip. The complaint alleges that the Document Manager program is used in conjunction with JustText; and that the Lithographer, Lithographer II and Mac II

Rip programs are included in the ColorSystem I program marketed by KEI.

Each of the five copyright registrations lists William Bates as the author of the work, and KEI as the copyright claimant. The registration form requires the copyright claimant, if different from the author, to give a brief statement as to how the claimant obtained ownership of the copyright. In response to that direction, each registration contains the phrase "transfer of all rights by author." Brooks signed each of the five copyright applications on behalf of KEI on June 5 or 7, 1989. He commenced this action on June 27, 1989.

Brooks alleges in his complaint that prior to April 1988, Bates had been doing business on his own under the name "Knowledge Engineering," but had never incorporated under that name. Brooks alleges that in April 1988, Bates needed money, from a business standpoint and personally as well. Without money Bates was unable to develop the ColorSystem I computer software package. Brooks alleges in substance that he and Bates formed KEI, Brooks contributing the funds and Bates the computer expertise. Subsequently, Brooks alleges, he discovered that Bates, in violation of KEI's corporate existence and in violation of his fiduciary obligation to the company, set himself up in a separate business as "Knowledge Engineering" and began to deal directly with customers of KEI.

Accordingly Brooks commenced this action. The first cause of action, which lies at the heart of the present motion, alleges that KEI is the owner of the five copyrighted programs and that Bates is infringing those copyrights.

Bates interposed an answer consisting of a general denial, several affirmative defenses, and five counterclaims. Bates' second affirmative defense alleges that the Court lacks subject matter jurisdiction under the Copyright Act. The first counterclaim alleges fraud on the Copyright Office and prays for an order cancelling the certificates of registration in KEI's name. The other four counterclaims seek a declaration that plaintiff and the nominal corporate plaintiff have no interest in the propriety material; injunctive relief and compensatory damages; damages for abuse of process; and an accounting.

Plaintiff's reply to the counterclaims alleges, *inter alia*, that KEI is the registered owner of the copyrights (first affirmative defense); that Bates' rights to the programs were transferred to KEI by operation of law (second affirmative defense); that Bates' claim to trade secrets in the programs were transferred to KEI by operation of law; that Bates as author of the program transferred his copyrights to KEI "by his notice of copyright placed by him on copies of said computer programs" (fourth affirmative defense); and that Bates as author of the programs transferred his copyrights to KEI "by parol agreement ... prior to the registration of said copyrights" (fifth affirmative defense).

Brooks also appended to his reply to Bates' counterclaims a self-styled "first counterclaim" for breach of contract and a "second counterclaim" for unjust enrichment.

Bates moves for an order of dismissal or summary judgment on Brooks' first cause of action. Because the parties have submitted material falling outside the pleadings which the Court has considered, I treat the motion as one for summary judgment under Rule 56. Bates also moves for summary judgment on Brooks' first five affirmative defenses, and to dismiss the two counterclaims referred in Brooks' reply to Bates' counterclaims.

## DISCUSSION

Copyright protection "subsists ... in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). The limited monopoly granted to an author by the Copyright Act "is a means by which an important public purpose may be achieved. It is intended to motivate the creative activity of authors and inventors by the provision of a special award, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." *Sony Corp. v. Universal Studios, Inc.*, 464

U.S. 417, 429, 104 S.Ct. 774, 782, 78 L.Ed.2d 574 (1984). In the case at bar, plaintiff concedes that Bates is the author of the computer programs at issue.

The Copyright Act of 1976 provides at 17 U.S.C. § 204(a):

A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

It is common ground that Bates never executed a written transfer of his copyright ownership in the computer programs to KEI, to plaintiff Brooks, or to anyone else. Accordingly the question is whether the record establishes a transfer of copyright ownership "by operation of law." If such a transfer took place, it need not be in writing.

§ 204(a) does not define the phrase "operation of law." In *3 Nimmer on Copyright* (1991 ed.) at § 10.03[a], p. 10–34, the author's discussion of § 204(a) accompanies the phrase "operation of law" with a footnoted reference to 17 U.S.C. § 201(d)(1). § 201(d) refers to "Transfer of Ownership" of copyrights. Subsection (d)(1) provides:

The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

§ 201(e), captioned "Involuntary Transfer," provides as follows:

When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by the individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title.

Nimmer's Treatise refers to § 201(e)'s "curious provision invalidating involuntary transfers." *Op. cit. supra,* at § 10.04, p.

10–41. Since the statute contains the broad word "organization," Nimmer "raises the question of its possible impact on domestic transactions such as attachments pursuant to judicial proceedings, the rights of unpaid sellers to reclaim property, etc." *Id.* at p. 10–42. The House Report, Nimmer continues, makes it plain that § 201(e) "would not inhibit transfers of ownership pursuant to proceedings in bankruptcy and mortgage foreclosures, since in such cases the author, by his overt conduct in filing in bankruptcy, or hypothecating a copyright, has consented to such a transfer." *Ibid.* (footnotes omitted). These may be taken as examples of transfers of copyright "by operation of law." In like fashion, Nimmer observes, "it may be concluded that the transfer of rights from employee to employer in a for hire relationship is not precluded since this is based upon a rebuttable presumption of consent from the employee." *Ibid.* (footnote omitted). Nimmer had previously observed, at § 10.03[a], p. 10–36 n. 16, that the automatic vesting in an employee's copyright interest in the absence of a contrary agreement "constitutes a transfer 'by operation of law' within the meaning of 17 U.S.C. § 204(a). Concluding his discussion of § 201(e), Nimmer says:

This appears to mean, however, that although Section 201(d)(1) provides that a transfer of ownership of copyright may be effectuated by "operation of law" rather than by "conveyance," such operation of law must be triggered by the express or implied consent of the author. *Id.* at p. 10–42.

■ The lessons to be drawn from Professor Nimmer are that transfers of copyrights by operation of law are limited in number, and depend upon circumstances which establish the author's express or implied consent.

Case law on transfer of copyright by operation of law is sparse. In *Fantasy, Inc. v. Fogerty,* 664 F.Supp. 1345 (N.D.Cal. 1987), a case governed by § 28 of the now superseded 1909 Copyright Act, the district court held that the transfer of assets from a dissolving corporation to its shareholders pursuant to the laws of the state of incor-

poration constitute a transfer by operation of law of a copyright owned by the corporation. The court concluded that "copyright transfers by operation of law were valid under the 1909 Copyright Act, citing *Brecht v. Bentley*, 185 F.Supp. 890, 892 n. 1 (S.D.N.Y.1960), in which Judge Bryan said that the 1909 Act's provision "that a copyright may be bequeathed by will must be read to include intestate succession." In a case comparable to *Fantasy*, the Ninth Circuit, construing the 1909 Act, held without discussion of the point that where the copyright in radio play scripts was transferred from one corporation to another, that corporation was merged into a third corporation, and the surviving corporation then transferred the copyrights to a subsidiary, the subsidiary could enforce the copyrights. Judge Owen reached a contrary conclusion on the facts in *H.K., Inc. v. Mori Lee Associates, Inc.*, No. 85 Civ. 9929, 1989 U.S.Dist. LEXIS 7104 at * 5 n. 3 (S.D.N.Y. June 23, 1989) ("While H.K. may have succeeded to Lafayette's assets upon Lafayette's merger into H.K., it did not succeed to Lace Art's assets (including the copyright in question) as a result of the merger. Although Lace Art became a wholly owned subsidiary of Lafayette, it apparently retained its assets following reorganization and had not divested itself of them by the time its charter was revoked in 1983. Therefore, title to the lace copyright was not transferred to H.K. 'by operation of law,' 17 U.S.C. § 201(d)(1), or otherwise.")

■ In *Pamfiloff v. Giant Records, Inc.*, No. C–91–1708, (1991 U.S.Dist. LEXIS 15887, N.D.Cal. October 28, 1991), construing the 1976 Copyright Act, the district court rejected a contention that an oral agreement can give rise to a transfer of copyright by operation of law, thereby satisfying § 204(a). The district court observed that an allegation in the complaint "that Danville acquired the rights to the compositions by oral contract forecloses an argument that they were transferred by operation of law." U.S.Dist. LEXIS 15887 at 887 at * 7. I think that correctly states the law under 1976 Act, and to the extent that *Jerry Vogel Music v. Warner Bros.*

*Inc.*, 535 F.Supp. 172, 175 (S.D.N.Y.1982), relied upon by plaintiff at bar, suggests a contrary conclusion, I decline to follow it. *See also Mellencamp v. Riva Music Ltd.*, 698 F.Supp. 1154, 1161–62 (S.D.N.Y.1988) (Conboy, J.) (holding oral agreement to transfer a copyright as invalid under § 204(a), the "Copyright Statute of Frauds"); *Library Publications, Inc. v. Medical Economics Co.*, 548 F.Supp. 1231, 1234 (E.D.Pa.1982), *aff'd*, 714 F.2d 123 (3d Cir.1983) (same holding with respect to alleged oral exclusive license of copyright interests).

■ There is no basis in the present record for finding that Bates transferred his copyrights to plaintiff or to KEI by operation of law. Brooks and Bates conducted negotiations with each other and entered into a relationship which began in harmony and ended in mutual recrimination. Whoever may properly regard himself as aggrieved, there is no writing evidencing a transfer of Bates' copyrights sufficient to satisfy § 204(a), and the case does not fall within any of the limited circumstances recognized by the courts as constituting a transfer by operation of law. Bates' conduct in placing copyright notices on his softwear in the name of his own sole proprietorship, "Knowledge Engineering," does not suffice. It is undisputed that Bates used that name prior to his negotiations with Brooks. The adoption by the parties of the corporate name "Knowledge Engineering, Inc." and that company's incorporation in Connecticut (which I will assume was perfected although Bates appears to question it) fall well short of constituting a transfer of Bates' copyrights to the corporation. This is not a case of a corporate owner of a copyright merging with another or dissolving, so that its copyrights passed to the shareholders by operation of law. It is rather a case of two individuals negotiating with each other, agreeing, and then disagreeing, in circumstances which cannot be said to give rise to a transfer of copyrights by operation of law. Bates retained his copyrights at all times.

It follows that defendant is entitled to summary judgment dismissing plaintiff's first cause of action alleging copyright infringement, and to summary judgment dismissing plaintiff's first five affirmative defenses to defendant's counterclaims, all of which assert ownership in KEI of the copyrights, and which fall as a consequence of the conclusions reached in this Opinion. Defendant is also entitled to a direction to the Registrar of Copyrights that the copyright registrations in KEI's name be cancelled.

Plaintiff's remaining causes of action are not addressed by defendant's present motion. They assert claims as to which diversity of citizenship affords an alternative basis for subject matter jurisdiction in this Court.

 Lastly, plaintiff asserts in its answer to defendant's counterclaims two self-styled "counterclaims," for breach of contract and unjust enrichment. Defendant correctly observes that the Federal Rules of Civil Procedure do not contemplate a counterclaim to a counterclaim. However, Rule 15(a) permits a party to amend its pleadings by leave of court, "and leave shall be freely given when justice so requires." Construing plaintiff's most recent submission as a motion to amend his complaint to assert these two additional claims, I grant the motion and direct plaintiff to file and serve an amended complaint within thirty (30) days of the date of this Opinion and Order. Defendant is directed to answer the amended pleading within the time specified by the rules.

Counsel for defendant are directed to settle a Judgment consistent with this Opinion on seven (7) days' notice not later than December 21, 1991.

The parties are directed to attend a status conference on January 17, 1992 at 2:30 p.m. in Room 307.

It is SO ORDERED.